## FRANCIS ANDERSON *v.* COMMISSIONER OF CORRECTION
## (AC 32101)

DiPentima, C. J., and Bishop and Robinson, Js.

Argued January 6—officially released March 29, 2011

*Michael E. O'Hare*, supervisory assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, and *Tamara Grosso*, special deputy assistant state's attorney, for the appellant (respondent).

*Robert J. McKay*, special public defender, for the appellee (petitioner).

### Opinion

BISHOP, J. The respondent, the commissioner of correction, appeals from the judgment of the habeas court granting, in part, the revised amended petition for a writ of habeas corpus filed by the petitioner, Francis Anderson. The respondent claims that the court improperly determined that the petitioner was deprived of the effective assistance of trial counsel due to a conflict of interest. We agree and, accordingly, reverse the judgment of the habeas court.

The following procedural history is relevant to our resolution of the respondent's claim. In the underlying criminal matters, the petitioner was charged with three

counts of burglary in the third degree in violation of General Statutes § 53a-103, one count of larceny in the second degree in violation of General Statutes § 53a-123, two counts of larceny in the third degree in violation of General Statutes § 53a-124, two counts of credit card theft in violation of General Statutes § 53a-128c (a), one count of illegal use of a credit card in violation of General Statutes § 53a-128d, one count of receipt of money, goods or services from illegal use of a credit card in violation of General Statutes § 53a-128g, one count of assault in the third degree in violation of General Statutes § 53a-61 and violation of probation under General Statutes § 53a-32. On January 10, 2008, the petitioner entered guilty pleas, pursuant to the *Alford* doctrine,[1] to three counts of burglary in the third degree and one count of larceny in the second degree and admitted a violation of probation. The state entered a nolle prosequi as to the remaining charges. On March 6, 2008, the trial court sentenced the petitioner to a total effective sentence of five years imprisonment and three years of special parole. The petitioner did not file a direct appeal.

On October 8, 2009, the petitioner filed a revised amended petition for a writ of habeas corpus alleging that the trial court was not impartial. In response to this claim, the respondent raised the defense of procedural default. The petition also alleged that trial counsel, attorney Linda Babcock of the office of the public defender for the judicial district of Hartford (Hartford office), rendered ineffective assistance, depriving the petitioner of his right to the effective assistance of counsel under both the state and federal constitutions.

In the November 9, 2009 habeas hearing, Babcock testified that the petitioner had been implicated in some

---

[1] See *North Carolina* v. *Alford*, 400 U.S. 25, 37, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

of the charges by a codefendant, Jason Fennely, who was represented by another public defender from the Hartford office, attorney Robert Famiglietti. She also testified that, while the criminal case was pending, she had requested Famiglietti's permission to speak with Fennely to learn whether he planned to testify against the petitioner but that Famiglietti had denied the request. Additionally, Babcock testified that Famiglietti would not reveal Fennely's intentions. Finally, in this regard, Babcock testified that she and Famiglietti shared no information pertaining to the case, and the fact that they worked in the same office had no effect on her representation of the petitioner.

By oral decision at the close of the hearing, the habeas court found that the petitioner's claim as to the trial court's impartiality was procedurally defaulted. The court also found that Babcock did not act in a constitutionally defective manner in her representation of the petitioner. Nevertheless, the court granted the petition on the basis of its finding that the petitioner's trial counsel had an actual conflict of interest. The court reasoned that Famiglietti and Babcock, as public defenders from the same office, were members of the same law firm and were prohibited ethically from representing adverse interests. Because they represented codefendants with adverse interests, the court found that their simultaneous representation of the petitioner and Fennely was a conflict of interest prohibited by rule 1.7 of the Rules of Professional Conduct.[2] On this

[2] Rule 1.7 (a) of the Rules of Professional Conduct provides in relevant part: "[A] lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if: (1) the representation of one client will be directly adverse to another client; or (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer."

basis, and without finding that Babcock's claimed conflict adversely affected her representation of the petitioner, the court granted the petition. The court simultaneously found against the petitioner on every other claim that he had advanced in support of his petition.[3] On November 25, 2009, the court denied the respondent's motion for reconsideration but, subsequently, on March 5, 2010, granted the respondent's petition for certification to appeal.

On appeal, the respondent claims that the habeas court improperly determined that Babcock was burdened by an actual conflict of interest that deprived the petitioner of his constitutional right to the effective assistance of counsel. In this regard, the respondent makes three distinct claims, namely, that the court improperly determined that (1) the representation was prohibited by the Rules of Professional Conduct, (2) a breach of the rules was sufficient to establish a constitutional violation and (3) the record supported a conclusion that Babcock was burdened by an actual conflict of interest.[4] We agree with each claim.

We begin with the standard of review and governing legal principles. "The sixth amendment to the United States constitution as applied to the states through the fourteenth amendment, and article first, § 8, of the Connecticut constitution, guarantee to a criminal defendant the right to effective assistance of counsel. . . . Where a constitutional right to counsel exists, our Sixth Amendment cases hold that there is a correlative right

[3] The petitioner has not cross appealed from the court's denial of his petition on the other grounds of his ineffectiveness claim, which alleged that Babcock's performance was deficient. Consequently, the fate of his petition rests entirely on our resolution of the conflict of interest issue.

[4] The respondent also claims that the court improperly failed to determine whether the alleged conflict of interest adversely affected counsel's performance. Because we reverse on the basis that the petitioner failed to demonstrate an actual conflict of interest, we need not reach the merits of this claim.

to representation that is free from conflicts of interest. . . . *State* v. *Parrott*, 262 Conn. 276, 286, 811 A.2d 705 (2003) . . . . The right attaches at trial as well as at all critical stages of a criminal proceeding, including a hearing in probable cause. See *State* v. *Gaines*, 257 Conn. 695, 706–707, 778 A.2d 919 (2001)." (Citations omitted; internal quotation marks omitted.) *Santiago* v. *Commissioner of Correction*, 87 Conn. App. 568, 582–83, 867 A.2d 70, cert. denied, 273 Conn. 930, 873 A.2d 997 (2005). In reviewing an ineffective assistance claim predicated on a conflict of interest, "[a]lthough the underlying historical facts found by the habeas court may not be disturbed unless they were clearly erroneous, whether those facts constituted a violation of the petitioner's rights under the sixth amendment is a mixed determination of law and fact that requires the application of legal principles to the historical facts of [the] case. . . . As such, that question requires plenary review . . . ." (Citation omitted; internal quotation marks omitted.) *Phillips* v. *Warden*, 220 Conn. 112, 131, 595 A.2d 1356 (1991).

I

We first consider the respondent's claim that the court improperly determined that Babcock's representation was prohibited by the Rules of Professional Conduct. Rule 1.7 (a) of the Rules of Professional Conduct prohibits representation that involves a concurrent conflict of interest such that "(1) the representation of one client will be directly adverse to another client; or (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client . . . ." Accordingly, the commentary to rule 1.7, subtitled "Conflicts in Litigation," advises that, ordinarily, lawyers should decline to represent codefendants in criminal matters. Here, the court found that the petitioner and Fennely had adverse interests such that they should not have been

represented by a single lawyer without giving their informed consent. See Rules of Professional Conduct 1.7 (b).

Although Babcock did not represent both the petitioner and Fennely, the court imputed a conflict of interest to her on the ground that she and Fennely's counsel both worked in the Hartford office. Generally, there is support for the notion that two lawyers from the same firm may not ethically represent adverse interests. Rule 1.10 (a) of the Rules of Professional Conduct[5] provides that one lawyer's conflicts generally are imputed to the members of his or her firm. " 'Firm' " is defined in rule 1.0 (d), the commentary to which provides that "[w]ith respect to the law department of an organization, including the government, there is ordinarily no question that the members of the department constitute a firm within the meaning of the Rules of Professional Conduct . . . ." Rules of Professional Conduct 1.0, commentary. Here, the court found that the two public defenders were, "for all intents and purposes, members of the same law firm." The court found, as well, that there would be a high risk that the lawyers would have breached the attorney-client privilege if the matter had gone to trial, particularly if one had been required to cross-examine the other's client. The court concluded that the dual representation of codefendants with adverse interests was improper as a concurrent conflict of interest prohibited by rule 1.7 of the Rules of Professional Conduct.

The respondent contends that Babcock was not subject to imputation under rule 1.10 because she was

---

[5] Rule 1.10 (a) of the Rules of Professional Conduct provides: "While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7 or 1.9, unless the prohibition is based on a personal interest of the prohibited lawyer and does not present a significant risk of materially limiting the representation of the client by the remaining lawyers in the firm."

a government employee, citing rule 1.10 (d) and the commentary to rule 1.11.[6] Rule 1.10 (d) of the Rules of Professional Conduct provides: "The disqualification of lawyers associated in a firm with former or current government lawyers is governed by Rule 1.11." Rule 1.11 (d), in turn, subjects current government lawyers to rules 1.7 and 1.9, regarding personal conflicts of interest, but does not provide for the imputation of conflicts. Rather, the commentary to rule 1.11 emphasizes that "Rule 1.10 is not applicable to the conflicts of interest addressed by this Rule" and explains that "[b]ecause of the special problems raised by imputation within a government agency, *subsection (d) [of rule 1.11] does not impute the conflicts of a lawyer currently serving as an officer or employee of the government to other associated government officers or employees*, although ordinarily it will be prudent to screen such lawyers. . . ." (Emphasis added.) Rules of Professional Conduct 1.11, commentary. Thus, the plain language of rules 1.10 and 1.11 supports the respondent's contention that the imputation did not accord with the Rules of Professional Conduct.

Although our decisional precedents support a contrary conclusion,[7] they can be distinguished readily. The

[6] With regard to current government employees, rule 1.11 (d) of the Rules of Professional Conduct provides: "Except as law may otherwise expressly permit, a lawyer currently serving as a public officer or employee: (1) Is subject to Rules 1.7 [duties to current client] and 1.9 [duties to former client]; and (2) Shall not: (i) Participate in a matter in which the lawyer participated personally and substantially while in private practice or nongovernmental employment, unless the appropriate government agency gives its informed consent, confirmed in writing; or (ii) Negotiate for private employment with any person who is involved as a party or as lawyer for a party in a matter in which the lawyer is participating personally and substantially; except that a lawyer serving as a law clerk to a judge, other adjudicative officer or arbitrator may negotiate for private employment as permitted by Rule 1.12 (b) and subject to the conditions stated in Rule 1.12 (b)."

[7] See, e.g., *State* v. *Webb*, 238 Conn. 389, 417–21, 680 A.2d 147 (1996) (examining whether two public defenders were members of single firm for purposes of rule 1.10), aff'd after remand, 252 Conn. 128, 750 A.2d 448, cert. denied, 531 U.S. 835, 121 S. Ct. 93, 148 L. Ed. 2d 53 (2000); *Williams* v.

current revisions of rules 1.10 and 1.11, which adopted the express distinction that conflicts are not imputed between current government employees,[8] took effect on January 1, 2007. Rules of Professional Conduct 1.10 and 1.11. These revisions mirror the 2002 amendments to the American Bar Association (ABA) Model Rules of Professional Conduct. See Annotated Model Rules of Professional Conduct (6th Ed. 2007) p. 625. To date, our appellate courts have not had occasion to interpret these revised rules. Consequently, the interpretation of the applicable rules, as amended in Connecticut to take effect January 1, 2007, is a matter of first impression for this court on review.

In presently recognizing that the Rules of Professional Conduct do not impute conflicts between associated government employees, we rely not only on the plain language of the rules but also on commentary from other sources. The annotations to model rule 1.10 published by the ABA state in relevant part: "A government law office is ordinarily considered a firm for purposes of the ethics rules. . . . However, Rule 1.10 does not apply to the imputation of conflicts in government law offices. Amendments made to Rule 1.10 in 2002

*Warden*, 217 Conn. 419, 432 n.5, 586 A.2d 582 (1991) (undisputed that attorneys in same public defender's office were bound by duties that other owed to his clients per rule 1.10). See also Connecticut Bar Association Committee on Professional Ethics, Informal Opinion No. 92-23 (1992) (for purposes of rule 1.10, public defenders from same branch are members of firm, but those from different branches are not). These opinions predate the 2007 amendments to Connecticut rules 1.10 and 1.11.

[8] Prior to the 2007 amendments, rule 1.10 of the Rules of Professional Conduct made no distinction between private lawyers and government lawyers. Rules of Professional Conduct (2006) 1.10. Additionally, rule 1.11 was narrowly concerned with "Successive Government and Private Employment," as it was titled at the time. Rules of Professional Conduct (2006) 1.11. Effective January 1, 2007, the title of rule 1.11 was changed to "Special Conflicts of Interest for Former and Current Government Employees." Its provisions for imputation apply only to *former* employees of the government, and its commentary declines to impute conflicts among current government lawyers. Rules of Professional Conduct 1.11 and commentary.

declare that . . . the imputation of one government lawyer's disqualification to others in the same government law office is governed exclusively by Rule 1.11 (d) and not by Rule 1.10." (Citation omitted.) Annotated Model Rules of Professional Conduct, supra, p. 174, citing American Bar Association, A Legislative History: The Development of the ABA Model Rules of Professional Conduct, 1982-2005, p. 255 (2006) (before 2002 amendments, application of model rule 1.10 to current and former government lawyers was " 'unclear' ").

We also find support in other jurisdictions that have adopted the ABA model rules in this regard. Because each state adopts its own rules, we must carefully determine whether the rules under scrutiny are the same as those adopted in Connecticut. For example, Massachusetts has not adopted the 2002 amendments to the ABA model rules 1.10 and 1.11, and New York's rules are only marginally similar to the model rules in that regard. Additionally, although Rhode Island and Vermont[9] have adopted the amendments, their appellate courts have not yet interpreted them. American Bar Association, Center for Professional Responsibility, Charts Comparing Professional Conduct Rules, available at http://www.abanet.org/cpr/pic/charts.html (last visited February 4, 2011).

[9] In regard to the imputation of current conflicts among associated government lawyers, the reporter's notes on the 2009 amendments to the Vermont Rules of Professional Conduct state: "The Commission determined that it made sense to address in Rule 1.11, not only the imputation of former-client conflicts, but also the imputation of current conflicts of interest under Rule 1.7. As with former-client conflicts, the Commission decided that these conflicts should *not* be imputed to lawyers associated in a government agency, even when formal screening mechanisms are not instituted." (Emphasis added.) Vermont Supreme Court, Attachment to Promulgation Order; Amendments to Vermont Rules of Professional Conduct 2009; Reporter's Notes (June 17, 2009), available at http://www.vermontjudiciary.org/lc/statutes%20and%20rules/promulgated-jun1709-vrpc.pdf (last visited February 4, 2011).

Colorado and Nebraska, however, have adopted rules that are identical in relevant part to Connecticut's Rules of Professional Conduct 1.10 and 1.11 and have had occasion to interpret them. In *People* v. *Shari*, 204 P.3d 453 (Colo. 2009), the Supreme Court of Colorado stated that "[t]he comments to Rule 1.11 make clear that a government attorney's individual conflicts are not imputed to the entire government agency for which he works." Id., 459 (declining to disqualify public defenders although associates from their office had previously represented prosecution's main witnesses). Similarly, the Supreme Court of Nebraska rejected a per se imputed disqualification rule for prosecutors on the ground that "we recently endorsed a more flexible rule by adopting the Nebraska Rules of Professional Conduct." *State* v. *Kinkennon*, 275 Neb. 570, 577, 747 N.W.2d 437 (2008) (declining to disqualify prosecutor although associate in his office had previously represented defendant while in private practice). Citing the commentary to Nebraska rule 1.11, the court stated that "[t]his rule recognizes the distinction between lawyers engaged in the private practice of law, who have common financial interests, and lawyers in a prosecutor's office, who have a public duty to seek justice, not profits." Id. Additionally, the Supreme Court of Hawaii apparently decided to put the matter beyond dispute by promulgating an extended version of rule 1.10 (d) that provides: "The disqualifications of Rules 1.7, 1.9 (a), 1.9 (b), or 1.11 (c) (1) shall not be imputed to government lawyers provided the disqualified government lawyer has been screened from participation in the matter." (Internal quotation marks omitted.) *State* v. *Mark*, 123 Haw. 205, 215 n.16, 231 P.3d 478 (2010).

On the basis of the language of the applicable rules and the sound reasoning of sister states that have confronted this issue, we conclude that the Rules of Professional Conduct do not require the imputation of

conflicts of interest among public defenders working in the same office on the basis of reasoning that they are members of the same firm. In the present case, therefore, the habeas court improperly imputed a conflict of interest between Babcock and Famiglietti.

## II

Our conclusion that the habeas court incorrectly imputed a conflict of interest does not, however, end our inquiry. As the trial court stated, where lawyers in the same office represent clients with adverse interests, there is a risk that each may feel a divided loyalty between client and colleague.[10] For this reason, the commentary to rule 1.11 advises that "ordinarily it will be prudent to screen such lawyers." Rules of Professional Conduct 1.11, commentary. Recognizing this risk, and in accordance with decisional law; see *Cuyler* v. *Sullivan*, 446 U.S. 335, 345–50, 100 S. Ct. 1708, 64 L. Ed. 2d 333 (1980); we must examine whether this potential conflict ripened into an actual conflict.

"In a case of a claimed conflict of interest . . . in order to establish a violation of the sixth amendment the defendant has a two-pronged task. He must establish (1) that counsel actively represented conflicting interests and (2) that an actual conflict of interest adversely affected his lawyer's performance." (Internal quotation marks omitted.) *Phillips* v. *Warden*, supra, 220 Conn. 133, quoting *Cuyler* v. *Sullivan*, supra, 446 U.S. 350. "Where there is an actual conflict of interest, prejudice is presumed because counsel [has] breach[ed] the duty of loyalty, perhaps the most basic of counsel's duties.

---

[10] Despite our conclusion that conflicts of interest are not imputed among public defenders, where a potential conflict of interest arises, it remains the best practice to request that the trial court appoint a special public defender pursuant to Practice Book § 37-6 (a). We are aware, anecdotally, that it is the norm that when there is more than one defendant, the public defender's office seeks to have codefendants represented by special public defenders to avoid any risk of conflicts of interest.

Moreover, it is difficult to measure the precise effect on the defense of representation corrupted by conflicting interests." (Internal quotation marks omitted.) *Phillips* v. *Warden*, supra, 133, quoting *Strickland* v. *Washington*, 466 U.S. 668, 692, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Accordingly, an ineffectiveness claim predicated on an actual conflict of interest is unlike other ineffectiveness claims in that the petitioner need not establish actual prejudice. *Phillips* v. *Warden*, supra, 132–33.

An actual conflict of interest is more than a theoretical conflict. The United States Supreme Court has cautioned that "the possibility of conflict is insufficient to impugn a criminal conviction." *Cuyler* v. *Sullivan*, supra, 446 U.S. 350. A conflict is merely "a *potential* conflict of interest if the interests of the defendant may place the attorney under inconsistent duties at some time in the future." (Emphasis in original; internal quotation marks omitted.) *Santiago* v. *Commissioner of Correction*, supra, 87 Conn. App. 589, quoting *United States* v. *Williams*, 372 F.3d 96, 102 (2d Cir. 2004). "To demonstrate an actual conflict of interest, the petitioner must be able to point to *specific instances* in the record which suggest impairment or compromise of his interests for the benefit of another party. . . . A mere theoretical division of loyalties is not enough." (Citation omitted; emphasis in original; internal quotation marks omitted.) *Santiago* v. *Commissioner of Correction*, supra, 584. If a petitioner fails to meet that standard, for example, where only a potential conflict of interest has been established, prejudice will not be presumed, and the familiar *Strickland* prongs will apply.[11] See id., 583 n.14.

---

[11] As enunciated in *Strickland*, "[t]o prevail on a claim of ineffective assistance of counsel, a petitioner must show (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the defense." (Internal quotation marks omitted.) *Moore* v. *Commissioner of Correction*, 119 Conn. App. 530, 534, 988 A.2d 881, cert. denied, 296 Conn. 902, 991 A.2d 1103 (2010).

In the present case, the habeas court granted the habeas petition solely on the basis of a misapplication of the Rules of Professional Conduct. Additionally, even assuming arguendo that the court had applied the rules properly, an ethical violation alone is not sufficient to establish a constitutional violation. Ethical considerations are relevant to, but not dispositive of, an effectiveness determination. See, e.g., *Phillips* v. *Warden,* supra, 220 Conn. 137–40 (relying on both decisional law and "ethical precepts" of rule 1.7 to find actual conflict of interest). As the United States Supreme Court has stated, "breach of an ethical standard does not necessarily make out a denial of the Sixth Amendment guarantee of assistance of counsel. When examining attorney conduct, a court must be careful not to narrow the wide range of conduct acceptable under the Sixth Amendment so restrictively as to constitutionalize particular standards of professional conduct . . . ." *Nix* v. *Whiteside,* 475 U.S. 157, 165, 106 S. Ct. 988, 89 L. Ed. 2d 123 (1986). The teaching of the Supreme Court is particularly apt to the situation at hand in which the court made no finding that any real or potential conflict had any impact on Babcock's performance. In sum, a breach of ethics, standing alone without any evidence of adverse impact, does not constitute a deprivation of counsel for sixth amendment purposes. On this record, the respondent correctly asserts that the court's finding of an ethical violation alone does not establish that the petitioner was deprived of the effective assistance of counsel.

III

Aside from its determination of an ethical violation, the habeas court found no specific instances in the record that suggested that the petitioner's interests were impaired or compromised by Babcock's representation. To the contrary, the court expressly stated: "Based on what the court has heard, it doesn't appear

that attorney Babcock represented [the petitioner] in a constitutionally deficient manner." The court particularly noted that the case was in the pretrial stage such that Babcock had not had time to conduct an investigation. The court concluded, therefore, that the alleged deficiencies in Babcock's representation were the result of timing, not ineffectiveness on Babcock's part. Furthermore, according to Babcock's testimony, although she was aware that Fennely was likely to implicate the petitioner, there was no communication between the two public defenders regarding their respective clients, and her loyalty was not divided in any way. Both her unrebutted testimony and the fact that Babcock did not seek to withdraw from the representation strongly support our conclusion that she was not burdened by an actual conflict of interest during her representation of the petitioner. See, e.g., *State* v. *Webb*, supra, 238 Conn. 420–21 (court properly may credit both attorney's representations that no conflict existed and attorney's ethical decision not to seek to withdraw).

Because the court found an actual conflict solely on the basis of an improper application of the Rules of Professional Conduct and an improper finding that an ethical violation can be equated to a sixth amendment deprivation, we conclude that the petitioner has not demonstrated that an actual conflict of interest adversely affected Babcock's performance.

The judgment is reversed and the case is remanded with direction to render judgment denying the petition for a writ of habeas corpus.

In this opinion the other judges concurred.