# FELIPE DASILVA *v.* COMMISSIONER OF CORRECTION
# (AC 32221)

Beach, Robinson and Espinosa, Js.

Argued October 13, 2011—officially released January 3, 2012

*Diane Polan*, with whom, on the brief, was *S. Max Simmons*, for the appellant (petitioner).

*Denise B. Smoker*, senior assistant state's attorney, with whom, on the brief, were *John A. Connelly*, former state's attorney, and *Karen Biebolt*, assistant state's attorney, for the appellee (respondent).

*Opinion*

ESPINOSA, J. The petitioner, Felipe DaSilva, appeals from the judgment of the habeas court denying his petition for a writ of habeas corpus alleging that his trial counsel, assistant public defender Rosemary Montesi, had a conflict of interest. The petitioner claims that the habeas court improperly determined that (1) the trial court's inquiry into Montesi's potential conflict of interest satisfied the sixth amendment to the United States constitution, (2) the trial court obtained a valid waiver of the potential conflict from the petitioner and (3) Montesi adequately advised him of the risks of the potential conflict and obtained appropriate consent from him to continue representation despite this conflict. We affirm the judgment of the habeas court.[1]

The following facts and procedural history are relevant to our consideration of this appeal. In April, 2007, the petitioner and two others were arrested and charged with several crimes, including burglary in the third

---

[1] The habeas court did not reach the issue of whether a potential conflict adversely affected Montesi's performance because it found that the petitioner had waived his right to conflict free counsel under the sixth amendment.

degree and larceny in the third degree. At the time of his arrest, the petitioner was on youthful offender probation. The court appointed Montesi's office, the public defender's office in Waterbury, to represent the petitioner on three separate files on July 6, 2007. Montesi represented the petitioner in court for the first time on July 26, 2007. At that time, Montesi did not have the police report accompanying the petitioner's arrest and did not know that her office had represented one of the petitioner's codefendants. The state offered the petitioner a plea bargain of seven years incarceration, execution suspended after two years. The petitioner said that he would consider the offer, and the case was continued.

At the petitioner's next court appearance on August 2, 2007, the state lowered its offer to seven years incarceration, execution suspended after twenty months. The petitioner requested another continuance to consider this offer, which the court granted. On August 23, 2007, pursuant to the plea agreement, the petitioner pleaded guilty under the *Alford* doctrine[2] to the burglary and larceny charges and admitted violating his probation. At that hearing, Montesi notified the court that her office had represented one of the petitioner's codefendants, and she requested that the court question the petitioner about waiving any potential conflict of interest issues. The following colloquy between the court and the petitioner ensued:

"The Court: Mr. DaSilva, you have a right to have a lawyer separate from Ms. Montesi's office. You want to go forward today with her, yes or no?

"[The Petitioner]: Yes, Your Honor.

"The Court: Has anybody forced you, threatened you in any way to make that decision?

---

[2] See *North Carolina* v. *Alford*, 400 U.S. 25, 37, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

"[The Petitioner]: No.

"The Court: Do you think it's still in your best interests to have this done this way?

"[The Petitioner]: Yes, Your Honor.

"The Court: All right. Thank you."

The court proceeded to sentence the petitioner to a total effective sentence of seven years incarceration, execution suspended after twenty months, with a three year period of probation. Following his release from prison on April 7, 2008, the petitioner was arrested on July 10, 2008, for interfering with a police officer. At the time of his arrest, he was still on parole. He pleaded guilty to the interfering charge, and the court sentenced him to six months incarceration, to run concurrently with the remainder of his original sentence.

On June 22, 2009, the petitioner filed a petition for a writ of habeas corpus. He alleged that his confinement in connection with the burglary and larceny convictions was illegal because the convictions were obtained in violation of his sixth amendment right to conflict free counsel. Specifically, the petitioner claimed that Montesi had a conflict of interest because a member of her office had represented a codefendant in his case. The petitioner further claimed that Montesi had failed to obtain his written waiver of this conflict and that the sentencing court failed to conduct an adequate canvass regarding the conflict.

Montesi testified at the habeas proceeding that, on August 2, 2007, she discussed the state's second plea offer with the petitioner and also advised him that she had discovered that her office had represented one of the petitioner's codefendants. According to Montesi, she explained that, although she did not think that there was an actual conflict of interest, the petitioner was entitled to a special public defender if he no longer

wanted her to represent him. Montesi testified that, given all of this information, the petitioner indicated that he wanted her to continue representing him. Montesi did not, however, obtain a written waiver of the conflict from the petitioner as required under rule 1.7 of the Rules of Professional Conduct. She reasoned that she thought that by placing the waiver on the record at a later hearing, the resulting transcript would serve as a sufficient writing.

The habeas court denied the petition for a writ of habeas corpus in an oral decision on March 29, 2010. On April 22, 2010, the court granted the petitioner's petition for certification to appeal, and the petitioner filed the present appeal on April 29, 2010.

Our review in this case is plenary. "Although the underlying historical facts found by the habeas court may not be disturbed unless they were clearly erroneous, whether those facts constituted a violation of the petitioner's rights under the sixth amendment is a mixed determination of law and fact that requires the application of legal principles to the historical facts of this case. . . . As such, that question requires plenary review by this court unfettered by the clearly erroneous standard." (Citation omitted; internal quotation marks omitted.) *Phillips* v. *Warden*, 220 Conn. 112, 131, 595 A.2d 1356 (1991).

"The sixth amendment to the United States constitution as applied to the states through the fourteenth amendment, and article first, § 8, of the Connecticut constitution, guarantee to a criminal defendant the right to effective assistance of counsel. . . . Where a constitutional right to counsel exists, our Sixth Amendment cases hold that there is a correlative right to representation that is free from conflicts of interest. . . . The right attaches at trial as well as at all critical stages of a criminal proceeding . . . ." (Citations omitted; internal

quotation marks omitted.) *Santiago* v. *Commissioner of Correction*, 87 Conn. App. 568, 582–83, 867 A.2d 70, cert. denied, 273 Conn. 930, 873 A.2d 997 (2005).

Our Supreme Court has described a conflict of interest as "that which impedes [an attorney's] paramount duty of loyalty to his client. . . . Thus, an attorney may be considered to be laboring under an impaired duty of loyalty, and thereby be subject to conflicting interests, because of interests or factors personal to him that are inconsistent, diverse or otherwise discordant with [the interests] of his client . . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *Crespo*, 246 Conn. 665, 689–90, 718 A.2d 925 (1998), cert. denied, 525 U.S. 1125, 119 S. Ct. 911, 142 L. Ed. 2d 909 (1999). "Conflicts of interest . . . may arise between the defendant and the defense counsel. The key here should be the presence of a specific concern that would divide counsel's loyalties." (Internal quotation marks omitted.) *State* v. *Barnes*, 99 Conn. App. 203, 217, 913 A.2d 460, cert. denied, 281 Conn. 921, 918 A.2d 272 (2007).

"In a case of a claimed conflict of interest, therefore, in order to establish a violation of the sixth amendment the defendant has a two-pronged task. He must establish (1) that counsel actively represented conflicting interests and (2) that an actual conflict of interest adversely affected his lawyer's performance." (Internal quotation marks omitted.) *Phillips* v. *Warden*, supra, 220 Conn. 133.

I

Before reaching the petitioner's claims, we note that the habeas court found, and the petitioner conceded, that the circumstances in the present case gave rise to a potential conflict, but not an actual conflict. We agree. "To demonstrate an actual conflict of interest, the petitioner must be able to point to specific instances in the record which suggest impairment or compromise of his

interests for the benefit of another party. . . . A mere theoretical division of loyalties is not enough." (Citation omitted; internal quotation marks omitted.) *Santiago* v. *Commissioner of Correction*, supra, 87 Conn. App. 584–85. There are no specific instances in the record that suggest that the petitioner's interests were impaired or compromised by Montesi's representation.[3] Accordingly, the habeas court properly found that the petitioner had not demonstrated an actual conflict of interest.

There was, however, a potential conflict in this case. At the sentencing hearing, Montesi represented to the court that she thought there was a potential conflict because a public defender from her office had represented one of the petitioner's codefendants. Our Supreme Court has explained that "the trial court must be able, and be freely permitted, to rely upon [defense] counsel's representation that the possibility of such a conflict does or does not exist. . . . The reliance in such an instance is upon the solemn representation of a fact made by [the] attorney as an officer of the court." (Citations omitted; internal quotation marks omitted.) *State* v. *Drakeford*, 261 Conn. 420, 427, 802 A.2d 844 (2002). Given the facts surrounding Montesi's representation and that Montesi stated to the trial court that

[3] The parties disagreed about the significance of the fact that Montesi was from the same public defender's office as counsel for one of the petitioner's codefendants. On this point, the parties discussed *Anderson* v. *Commissioner of Correction*, 127 Conn. App. 538, 15 A.3d 658, cert. granted, 301 Conn. 921, 22 A.3d 1280 (2011), in their briefs and at oral argument before this court. In *Anderson*, we held that rules 1.10 and 1.11 of the Rules of Professional Conduct did not require the habeas court to impute an actual conflict among public defenders working in the same office on the basis of being members of the same "firm." Id., 544–49. For the purposes of the present appeal, *Anderson* stands for the proposition that the fact that Montesi was from the same public defender's office as counsel for one of the petitioner's codefendants was not, on its own, enough for the habeas court to find an actual conflict of interest. Because the habeas court made no such finding in the present case, *Anderson* is inapposite to our resolution of this appeal.

there was a potential conflict, we conclude that the habeas court properly found that there was at least a potential conflict.

## II

The petitioner first claims that the habeas court improperly determined that the trial court met its obligation to protect his right under the sixth amendment to representation that was free from conflicts of interest. The petitioner advances two separate grounds in this regard. First, he argues that the trial court conducted an insufficient inquiry into the details of the potential conflict. Second, he asserts that the trial court failed to obtain a valid waiver from him after Montesi notified it of the potential conflict. We are not persuaded by either argument.

## A

The petitioner first claims that the trial court conducted an insufficient inquiry into the details of the possible conflict. According to the petitioner, the court failed to investigate the facts and details of Montesi's conflict and also did not identify whether the conflict was actual or potential. The petitioner argues that these shortcomings require reversal of his conviction. We disagree.

"There are two circumstances under which a trial court has a duty to inquire with respect to a conflict of interest: (1) when there has been a timely conflict objection at trial . . . or (2) when the trial court knows or reasonably should know that a particular conflict exists. . . . Before the trial court is charged with a duty to inquire, the evidence of a specific conflict must be sufficient to alert a reasonable trial judge that the defendant's sixth amendment right to effective assistance of counsel is in jeopardy. . . . The course thereafter followed by the court in its inquiry *depends upon*

*the circumstances of the particular case.*" (Citations omitted; emphasis added; internal quotation marks omitted.) *State* v. *Barnes,* supra, 99 Conn. App. 216–17.

In *State* v. *Parrott,* 262 Conn. 276, 811 A.2d 705 (2003), our Supreme Court held that the defendant's sixth amendment right to counsel free from conflicts of interest was not violated when his defense attorney refused to sit next to him during voir dire out of concern for his personal safety. Id., 288–89. On the third day of voir dire, the defendant expressed his dissatisfaction with this arrangement to the trial court. Id., 283. When the court suggested that defense counsel sit next to the defendant, counsel refused. Id., 284. The court asked the defendant if he wanted defense counsel to continue representing him, and the defendant stated that he did. Id. Defense counsel assured the court that he could represent the defendant adequately, and the court allowed things to proceed to "see how it develop[ed]." (Internal quotation marks omitted.) Id., 285. Although the Supreme Court concluded that there was a potential conflict, it held that the trial court made an appropriate inquiry given the circumstances. Id., 288–89.

In the present case, based on the circumstances, the trial court conducted a sufficient inquiry into the details of the potential conflict. Critically, at the habeas proceeding, the petitioner expressed that he had had no interest in going to trial because he had given a full confession and believed that he probably would have been found guilty. Under these circumstances, an extensive inquiry was not necessary. As in *Parrott,* a separate hearing was not needed to ascertain the nature of the conflict. Here, the nature of the conflict was that (1) Montesi and counsel for one of the petitioner's codefendants both worked in the Waterbury public defender's office, (2) the petitioner did not want to go to trial and (3) the petitioner wished to retain Montesi in light of this information. Given these circumstances, the possibility

that the potential conflict could ripen into an actual conflict was nonexistent. The fact that Montesi was employed by the same office as the attorney of one of the petitioner's codefendants possibly would raise conflict concerns only if the case went to trial. In that case, questions could arise regarding Montesi's ability to cross-examine the petitioner's codefendant and her ability to represent the interests of the petitioner zealously. Considering that the petitioner had expressed no interest in going to trial, however, there was no risk of these issues occurring in this case. Given the extreme remoteness of the potential conflict, the trial court's inquiry was sufficient.

Nevertheless, the petitioner argues that the court's inquiry contained none of the indicia of an adequate inquiry present in some federal cases that dealt with the issue. In support of this argument, the petitioner principally relies on *United States* v. *Curcio*, 680 F.2d 881 (2d Cir. 1982), and *United States* v. *Levy*, 25 F.3d 146 (2d Cir. 1994). On the basis of these cases, the petitioner maintains that, during an appropriate inquiry, the court should have alerted him to the substance of the risks of being represented by an attorney with divided loyalties. According to the petitioner, this would entail nothing less than the court instructing him regarding the potential conflict "in as much detail as the court's experience and its knowledge of the case will permit."

The procedures recommended by the United States Court of Appeals for the Second Circuit in those cases are not required here. In both of those cases, the defendant was being represented by counsel who was also representing a codefendant, and, in both cases, the defendant intended to go to trial. See *United States* v. *Curcio*, supra, 680 F.2d 882–83; *United States* v. *Levy*, supra, 25 F.3d 149–50. The risk of conflict in those cases was much more pronounced than in the present case,

as Montesi did not represent a codefendant and the petitioner expressed that he did not intend to go to trial. Both *Curcio* and *Levy* are therefore distinguishable, and the sort of inquiry called for by the Second Circuit in those cases was not required here.

B

The petitioner next claims that the trial court failed to obtain a valid waiver from him regarding the potential conflict. He asserts that to have secured a valid waiver, the court needed to inquire whether he understood the risks of waiving the potential conflict and nevertheless wanted to proceed with the waiver. According to the petitioner, the court should have actively elicited narrative responses from him, rather than posing questions that could be answered with a mere "yes" or "no." We are not persuaded.

"The scope of a court's inquiry [into whether there is a conflict] . . . depends on the circumstances, and a court need not necessarily elicit a waiver." (Internal quotation marks omitted.) *State* v. *Barnes*, supra, 99 Conn. App. 220. Where there is an actual or potential conflict, however, the court must obtain a valid waiver from the defendant if counsel is to continue to represent the defendant. "A valid waiver of a constitutional right . . . must be knowing and intelligent, accomplished with sufficient awareness of the relevant circumstances and likely consequences. . . . [T]he fact that a defendant, with full awareness of the circumstances and consequences of the potential conflict, waives his right to the effective assistance of counsel must appear on the record in clear, unequivocal, unambiguous language." (Citations omitted; internal quotation marks omitted.) *State* v. *Reed*, 174 Conn. 287, 293–94, 386 A.2d 243 (1978).

Although the trial court's inquiry of the petitioner was brief, the petitioner's responses were sufficient

under the circumstances to constitute a knowing and intelligent waiver of the potential conflict. The habeas court found that Montesi had spoken to the petitioner regarding the potential conflict in this case on August 2, 2007, before the sentencing hearing, and that the petitioner did not object to her continued representation. The petitioner then clearly and unambiguously waived the potential conflict at the sentencing hearing. Under the circumstances, this was sufficient to constitute a valid waiver of the potential conflict.

The petitioner argues that he did not have enough time to "digest" the risks posed by the potential conflict, as the court conducted its inquiry during the same hearing at which it accepted his guilty pleas and sentenced him. We disagree. As noted previously, the habeas court found that Montesi had advised him of the potential conflict on August 2, 2007; this left the petitioner nearly a month to consider whether he should obtain new counsel. By contrast, our Supreme Court has upheld a waiver where the defendant claimed that he did not know of the conflict until "minutes" before the hearing at which he waived the right to conflict free representation. See *State* v. *Williams*, 203 Conn. 159, 171, 523 A.2d 1284 (1987) ("[i]n light of the defendant's failure to seek a continuance, we conclude that it was not unreasonable for the trial court to assume that he had had all the time he needed to consider the risks of his decision").

Additionally, the petitioner asserts that the waiver was inadequate because the trial court did not encourage him to obtain independent counsel for advice regarding the potential conflict. This claim is without merit. The petitioner offers no support for his contention that the court was required to so advise him. In light of our conclusion that the petitioner's waiver was made knowingly and voluntarily, it was not necessary for the court to advise the petitioner about obtaining independent counsel.

## III

Finally, the petitioner claims that the habeas court improperly determined that Montesi adequately advised him of the risks of the potential conflict and obtained appropriate consent from him to continue representation despite this conflict. The petitioner argues that Montesi fell short of her duty under the Rules of Professional Conduct to ensure that he fully appreciated the risks of not obtaining new counsel. According to the petitioner, Montesi could not have advised him adequately of the risks of retaining her as his counsel because she did not understand the ethical restraints on her ability to cross-examine a codefendant in the petitioner's case. The petitioner further urges this court to adopt rule 1.7 of the Rules of Professional Conduct as the standard against which to measure Montesi's conduct under the sixth amendment.[4] Therefore, the petitioner argues that because Montesi did not satisfy her ethical obligation under rule 1.7, we should hold that his right to counsel under the sixth amendment was violated. We agree with the habeas court that although rule 1.7 can inform our analysis of an alleged sixth amendment violation, it does not govern our analysis. We therefore reject the argument of the petitioner.

The United States Supreme Court has cautioned courts not to confuse ethical standards and constitutional standards. "[B]reach of an ethical standard does

---

[4] Rule 1.7 (a) of the Rules of Professional Conduct provides in relevant part: "[A] lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if: (1) the representation of one client will be directly adverse to another client; or (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer." Under rule 1.7 (b) (4), a client may only waive a concurrent conflict of interest by "informed consent, confirmed in writing." The commentary to rule 1.7 notes that "[i]nformed consent requires that each affected client be aware of the relevant circumstances and of the material and reasonably foreseeable ways that the conflict could have adverse effects on the interests of that client."

not necessarily make out a denial of the Sixth Amendment guarantee of assistance of counsel. When examining attorney conduct, a court must be careful not to narrow the wide range of conduct acceptable under the Sixth Amendment so restrictively as to constitutionalize particular standards of professional conduct . . . ." *Nix* v. *Whiteside*, 475 U.S. 157, 165, 106 S. Ct. 988, 89 L. Ed. 2d 123 (1986).

Our Supreme Court has taken a similarly cautious approach, referencing the Rules of Professional Conduct in the course of analyzing alleged sixth amendment violations but never holding that they were controlling constitutional standards. For example, in *Phillips* v. *Warden*, supra, 220 Conn. 137, the court noted that "[l]oyalty of a lawyer to his client's cause is the sine qua non of the Sixth Amendment's guarantee that an accused is entitled to effective assistance of counsel." (Internal quotation marks omitted.) The court went on to note that this duty of loyalty was "reflected in" rule 1.7 of the Rules of Professional Conduct and other disciplinary guidelines. Id.

The petitioner nevertheless argues that our Supreme Court has, in fact, used the Rules of Professional Conduct as the standard for determining violations of the sixth amendment. We do not agree. In support of his argument, the petitioner cites *State* v. *Williams*, supra, 203 Conn. 169 and n.9. In *Williams*, however, the court merely referenced the Code of Professional Responsibility, the precursor to the Rules of Professional Conduct, for the general ethical obligation of attorneys to exercise independent professional judgment on behalf of their clients. In light of this obligation and the status of attorneys as officers of the court, the court held that the trial court properly could rely on the assertion of counsel that he had determined that his client was adequately aware of the risks of waiving his right to conflict

free counsel. Id., 169–70. Referencing the Rules of Professional Conduct for background ethical principles, as the Supreme Court did in *Williams*, is very different from advancing those same rules as the standard by which this court must measure alleged sixth amendment violations. Therefore, even if Montesi misinterpreted rule 1.7 of the Rules of Professional Conduct, it does not necessarily follow that the petitioner's sixth amendment rights were violated.

We agree with the habeas court that, even assuming Montesi misunderstood rule 1.7, based on her testimony, which the habeas court found credible, the petitioner had sufficient information to waive the potential conflict in this case knowingly and intelligently. The habeas court found that Montesi advised the petitioner of the potential conflict. Montesi may have believed incorrectly that she could appropriately cross-examine the petitioner's codefendant under rule 1.7, but the petitioner expressed that he had no intention of going to trial. Montesi was not constitutionally required to advise the petitioner of every hypothetical consequence of taking the case to trial when it was not, in fact, going to trial. We therefore conclude that the habeas court properly found that Montesi adequately advised the petitioner of the potential conflict.

The judgment is affirmed.

In this opinion the other judges concurred.