WATERMAN, Justice
(concurring specially).
I concur with the result of the majority opinion reversing the district court order that disqualified the entire- Des Moines adult public defender’s office from representing Lavelle McKinley on his murder charge. I agree there is no conflict or potential conflict arising from the fact several witnesses had previously been represented on unrelated charges by other public defenders in this office with screening procedures in place to prevent misuse of confidential information. I write separately because the majority misses the opportunity to settle the recurring legal issue: whether an individual public defender’s conflict of interest is automatically imputed to the entire public defender’s office. The answer to that question should be “no.”
Public defenders represent most felony defendants in this state. Witnesses and victims often have their own criminal histories. The public defenders are salaried state employees and experienced trial lawyers who exercise individual independent judgment defending their clients. The district court erred by automatically imputing conflicts from one public defender to the entire office, including the two experienced attorneys McKinley wanted to retain. The automatic imputation issue was decided below and briefed by the State on appeal.[9] *887 We should follow the well-reasoned decisions of other courts applying equivalent rules of professional conduct that decline to automatically impute conflicts of interest of an individual public defender to others in the same office. Specifically, we should hold that the public defender’s office is not a “firm” within the meaning of Iowa Rule of Professional Conduct 82:1.10 and that public defenders are “government lawyers” within the meaning of Iowa Rule of Professional Conduct 32:1.11. Concerns arising from prior or concurrent representations by other public defenders in the same office can be resolved through screening procedures.
I. Analysis.
This issue requires analysis of the interplay between several of the Iowa Rules of Professional Conduct, patterned after the American Bar Association model rules.[10] Iowa rule 32:1.7(a) prohibits an attorney from representing a client if doing so “involves a concurrent conflict of interest.” Iowa R. of Profl Conduct 32:1.7(a).
A concurrent conflict exists if:
(1) the representation of one client will be directly adverse to another client; or
(2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer’s responsibilities to another client, a former client, or a third person or by a personal interest of the lawyer.
Id. r. 32:1.7(a)(1) — (2). Rule 32:1.9 prohibits an attorney “who has formerly represented a client in a matter [from] represent[ing] another person in the same or a substantially related matter in which that person’s interests are materially adverse to the interests of the former client.” Id. r. 32:1.9(a). The rule also provides:
A lawyer shall not knowingly represent a person in the same or a substantially related matter in which a firm with which the lawyer was formerly associated had previously represented a client
(1) whose interests are materially adverse to that person, and
(2) about whom the lawyer had acquired information protected by [the rules of confidentiality] that is material to the matter....
Id. r. 32:1.9(b)(l)-(2). Rule 32:1.10 is Iowa’s imputation requirement, providing that
[w]hile lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by rule 32:1.7 or 32:1.9, .unless the prohibition is based on a personal interest of the prohibited lawyer and does not present a significant risk of materially limiting the representation of the client by the remaining lawyers in the firm.
*888 Id. r. 32:1.10(a) (emphasis added). Finally, Iowa rule 32:1.11 excludes government lawyers from the imputation requirements of rule 32:1.10(a) by explicitly subjecting them only to rules 32:1.7 and 32:1.9. See id. r. 32:1.11(d)(1) (“Except as law may otherwise expressly permit, a lawyer currently serving as a public officer or employee ... is subject to rules 32:1.7 and 32:1.9....”).
To automatically impute the conflict of one public defender to the entire public defender’s office requires two determinations: (1) the public defender’s office is a “firm” under rule 32:1.10, and (2) a public defender is not “a lawyer serving as a public officer or employee” under rule 32:1.11. Neither determination should be made here. The bettér-reasoned decisions have rejected the automatic imputation of the conflicts of one public defender to the entire office. See United States v. Reynoso, 6 F.Supp.2d 269, 271-72 (S.D.N.Y.1998) (“[I]t does not make sense to apply to the Federal Defender Division[ ] the same standards for disqualification that would apply to a private law firm” and noting “[t]he American Law Institute has also recognized that imputed disqualification ... should not automatically apply to public defender offices”); People v. Shari, 204 P.3d 453, 459 & nn. 5-6 (Colo. 2009) (holding that a public defender’s office is not a firm under the imputation rule and that public defenders are government attorneys); Anderson v. Comm’r of Corr., 127 Conn.App. 538, 15 A.3d 658, 664 (2011) (holding that a public defender’s office is not a firm and that “the plain language of rules 1.10 and 1.11 supports the respondent’s contention that [public defenders are government attorneys]”); State v. Severson, 147 Idaho 694, 215 P.3d 414, 426-27 (2009) (holding that a public defender’s office is not a firm for purposes of imputation and adopting a case-by-case approach); People v. Miller, 79 Ill.2d 454, 38 Ill.Dec. 775, 404 N.E.2d 199, 202 (1980) (rejecting “the notion that a public defender’s pffice is to be treated as a law firm or ‘entity’ in considering a conflict of interest claim”); Bartley v. Commonwealth, 400 S.W.3d 714, 719-20 (Ky.2013) (utilizing a case-by-case approach to determine whether a conflict should be imputed within the public defender’s office); State v. St. Dennis, 358 Mont. 88, 244 P.3d 292, 298 (2010) (holding that a public defender’s office is not equivalent to a firm and adopting case-by-case approach); State v. Bell, 90 N.J. 163, 447 A.2d 525, 528-29 (1982) (noting the differences between firms and public defender’s offices); Asch v. State, 62 P.3d 945, 953 (Wyo.2003) (rejecting “automatic disqualification of assistant public defenders” because the public defender’s office is not equivalent to a firm).
Other courts apply an automatic-imputation rule to public defenders. See, e.g., Okeani v. Super. Ct., 178 Ariz. 180, 871 P.2d 727, 729 (1993) (“The conflict of interest is not alleviated by the fact that defendant and the victim were represented by different lawyers within the Public Defender’s Office.”); Bouie v. State, 559 So.2d 1113, 1115 (Fla.1990) (“As a general rule, a public defender’s office is the functional equivalent of a law firm.”); In re Formal Advisory Op. 10-1, 293 Ga. 397, 744 S.E.2d 798, 799-800 (2013) (per curiam) (concluding “that Rule 1.10(a) applies to a circuit public defender office as it would to a private law firm,” but noting imputing conflicts “imposes real costs on Georgia’s indigent defense system”); In re Hoang, 245 Kan. 560, 781 P.2d 731, 735-36 (1989) (noting the disqualifying conflict of one public defender was imputed to an entire office); Duvall v. State, 399 Md. 210, 923 A.2d 81, 95 (2007) (stating that “at a minimum, each district office of the public defender should be treated as a private law firm for conflict of interest purposes”); Richards v. Clow, 103 N.M. 14, 702 P.2d 4, *889 6 (1985) (limiting imputation of conflicts to public defenders within the judicial district or county rather than statewide); Commonwealth v. Westbrook, 484 Pa. 534, 400 A.2d 160, 162 (1979) (“[T]he Public Defenders Association of Philadelphia is a ‘law firm[.]’ ”); State v. Hunsaker, 74 Wash.App. 38, 873 P.2d 540, 542 (1994) (“[PJublic defender agencies qualify as ‘law firms’ for the purposes of application of the [professional conduct] rules.”); see also Restatement (Third) of the Law Governing Lawyers § 123 cmt. d(iv), at 289 (2000) (explaining that the “rules on imputed conflicts and screening of [the] Section apply to a public-defender organization as they do to a law firm in private practice in a similar situation”). Significantly, only one of these cases acknowledged the conflicting authority in other jurisdictions. See Duvall, 923 A.2d at 94 (stating that “jurisdictions remain divided on the issue of how to treat public defender’s offices during a conflict of interest analysis”). The other cases merely cite the rules or that state’s precedent without analysis.
In an unpublished opinion, our court of appeals applied the automatic-imputation rule:
We have no trouble concluding that the public defender’s office had a conflict of interest due to their concurrent representation of Brown, a witness adverse to Ibarra’s interests, and the past representation of Wilson, the victim. Although Valorie Wilson and Jennifer Russell had not previously, represented Brown or Wilson, the conflict of other members of the public defender’s office was imputed to them. See Iowa Rs. Prof'l Conduct 32:1.7 and 32:1.10.
State v. Ibarra, No. 12-0330, 2013 WL 530558, at *8 (Iowa Ct.App. Feb. 13, 2013) (footnote omitted). The Ibarra court did not address Iowa Rule of Professional Conduct 32:1.11 or survey the decisions from other jurisdictions. Our court should decide the question in a precedential opinion.[11]
Courts take different paths to the conclusion that an individual public defender’s conflict should not be automatically imputed to the entire office. Some courts arrive at this outcome by explicitly refusing to equate public defender’s offices to firms under ABA Model Rule 1.10 without addressing the government lawyer issue. Others reach both issues. I will address each issue in turn.
A. The Public Defender’s Office Is Not Like a Private Law Firm. The comments to ABA Model Rule 1.10 (Imputation of Conflicts of Interest) provide that:
For purposes of the Rules of Professional Conduct, the term “firm” denotes lawyers in a law partnership, professional corporation, sole proprietorship or other association authorized to practice law; or lawyers employed in a legal services organization or the legal department of a corporation or other organization.
Ellen J. Bennett, et al., Annotated Model Rules of Professional Conduct 178 (2011) [hereinafter Bennett]. The commentators omitted public defender offices or any government office or agency from the enumerated organizations falling under the definition of “firm.” The same comment, with the same omission, accompanies the Iowa *890 rule. See Iowa R. of Prof'l Conduct 32:1.10 cmt. 1. The ABA annotations also explain that “[a] government law office is also ordinarily considered a ‘firm’ for purposes of the ethics rules ..., but the imputation of conflicts in government law offices is regulated by Rule 1.11 rather than Rule 1.10.” Bennett at 181 (emphasis added). These comments indicate the drafters of the ABA Model Rules and Iowa rules never intended for public defenders to be subject to the automatic imputation of conflicts of interest. The better-reasoned decisions interpreting the model rules have held public defender’s offices are not firms for purposes of imputing conflicts.
The Montana Supreme Court distinguished public defender’s offices from private law firms as follows:
In deciding upon the approach to be taken in OPD [Office of Public Defender] conflict of interest cases, we consider among other factors the unique nature of public defender offices as opposed to private law firms. Unlike private law firms, the OPD is a not-for-profit public entity with a single source of clients engaged in a single type of legal proceeding. The OPD does not solicit clients or accept referrals from the public. Moreover, the attorneys are salaried employees rather than participants in the profits and revenue generated by a law firm. As such, their compensation is not driven by their success or failure.
St. Dennis, 244 P.3d at 297-98 (citation omitted). The Wyoming Supreme Court elaborated on the differences between public defenders and lawyers in private law firms:
[P]ublie defenders who are subject to a common supervisory structure within an organization ordinarily should be treated as independent for purposes of [imputing conflicts of interest]. The lawyers provide legal services, not to the public defender office, but to individual defendants. Ordinarily, the office would have no reason to give one defendant more vigorous representation than other defendants whose interests are in conflict. Thus, while individual defendants should be represented by separate members of the defender’s office, the representation of each defendant should not be imputed to other lawyers in an office where effective measures prevent communications of confidential client information between lawyers employed on behalf of individual defendants.
Similarly, there is no financial incentive for attorneys in a public defender’s office to favor one client over another. The public defender does not receive more money if one client prevails and another does not. An assistant public defender, as a salaried government employee, simply does not have the financial interest in a case that is inherent in private practice.
Asch, 62 P.3d at 953 (citations omitted) (internal quotation marks omitted). The Idaho Supreme Court reached the same conclusion:
“[A]utomatically disqualifying a public defender where another attorney in the office has a conflict of interest would significantly hamper the ability to provide legal representation of indigent clients. This, together with the fact that such concurrent representation by public defenders generally will create no incentive (economic or otherwise) for diminished advocacy in such cases, convinces us that a per se rule imputing conflicts of interest to affiliated public defenders is inappropriate where there is no indication the conflict would hamper an attorney’s ability to effectively represent a client.”
*891 Severson, 215 P.3d at 426 (quoting State v. Cook, 144 Idaho 784, 171 P.3d 1282, 1292 (2007)). As noted above, the cases imposing an automatic-imputation rule by treating public defender offices like private law firms did so without analysis.
The automatic-imputation rule also increases the burden on taxpayers. When an entire public defender’s office is disqualified, private contract attorneys must be paid at hourly rates or a distant public defender must be brought in with attendant travel time and expense. ' The-AscA court observed:
[I]t goes without saying that an experienced public defender who specializes in criminal defense is a valuable asset within the criminal justice system, especially to the indigent defendant. Furthermore, given Wyoming’s many small communities, with a limited number of lawyers, it could be difficult in many cases even to find local counsel for a defendant.
[Another] reason to avoid an automatic disqualification rule for imputed conflicts of interest among assistant public defenders is fiscal. Paying outside counsel every time there are multiple defendants in a case would, no doubt, be quite an expense for the taxpayers of the state. Where there has been no showing of an actual conflict of interest, and thus no showing of prejudice to the defendants, the minimal benefit of a per se rule would not justify the additional expense. While we cannot and should not “put a price on” the legal representation we provide to indigent defendants, the judicial branch of government still has an obligation to be fiscally responsible.
62 P.3d at 953-54. The same court also addressed the concern that substitute counsel may be less experienced and less competent:
Another reason to adopt a case-by-case inquiry for conflicts of interest within the State Public Defender’s Office is that to do otherwise would needlessly jeopardize the right of individual defendants to skilled and competent representation. As noted by the Illinois Supreme Court, “[i]n many instances the application of such a per se rule would require the appointment of counsel with virtually no experience in' the trial of criminal matters, thus raising, with justification, the question of competency of counsel.”
Id. at 953 (quoting People v. Robinson, 79 Ill.2d 147, 37 Ill.Dec. 267, 402 N.E.2d 157, 162 (1979)).
These decisions are persuasive and should be followed. The concerns outlined by these state supreme courts are raised in the case before us. McKinley, facing life in prison, chose to continue with his trial lawyers from the Des Moines adult public defender’s office rather than proceeding with a lawyer from the juvenile public defender’s office. Moreover, in many areas of the state, disqualification of the resident public defender’s office requires appointment of private contract attorneys or public defenders located farther away and at greater expense.
The best way to ensure that defendants receive conflict-free counsel while preventing the unnecessary disqualification of public defenders is by adopting a screening process sufficiently thorough to protect against the concerns giving rise to the imputation requirement. The Shari court outlined Colorado’s screening process, which the court found sufficient to assuage “any concerns regarding the communication of confidential information from the public defenders who previously represented the prosecution’s -witnesses.... ” 204 P.3d at 459. There is no reason screening *892 policies would not work equally well in Iowa.
B. Public Defenders Are Government Attorneys. While excluding public defender offices from the definition of firm under the Iowa Rules of Professional Conduct is sufficient to avoid automatic imputation, I also believe that public defenders are “lawyer[s] currently serving as ... public officer[s] or employee[s]” within the meaning of Iowa Rule of Professional Conduct 32:1.11 and are thereby exempted from automatic imputation for that additional reason. Both the Colorado Supreme Court and the Connecticut Court of Appeals came to the same conclusion. Shari, 204 P.3d at 459; Anderson, 127 Conn.App. 538, 15 A.3d at 664. As the Shari court explained:
Conflicts particular to individual lawyers within a firm can, in certain circumstances, be imputed to the entire firm. However, Rule 1.10 specifically states that [t]he disqualification of lawyers associated in a firm with former or current government lawyers is governed by Rule 1.11. Rule 1.11, in turn, subjects government lawyers to Rules 1.7 and 1.9. The comments to Rule 1.11 make clear that a government attorney’s individual conflicts are not imputed to the entire government agency for which he works. In accordance with Rule 1.11, we have recognized that a distinction must be drawn between an attorney in private practice with a traditional law firm and an attorney associated with a large public or governmental agency.
204 P.3d at 459 (footnotes' omitted) (citations omitted) (internal quotation marks omitted). Shari’s facts mirror the case before us.[12]
Like Colorado, Iowa excludes from imputation “a lawyer currently serving as a public officer or employee.” Iowa R. Profl Conduct 32:1.11. Using the plain language of the Iowa provision, it is evident that public defenders are included within this definition. Public defenders are salaried employees paid by the state. Accordingly, a public defender is a “lawyer currently serving as a public ... employee.” Compare Colo. R. of Prof'l Conduct 1.11, with Iowa R. of Prof'l Conduct 32:1.11(d). As such, they are governed by Iowa Rule of Professional Conduct 32:1.11 and excluded from the imputation requirements of rule 32:1.10.[13]
It is disappointing the majority today fails to take the opportunity to settle this recurring legal question. Until the automatic-imputation issue is resolved by court decision or rule amendment, our trial courts will continue to struggle case by case with public defender intraoffice con *893 flicts. Sadly, unnecessary disqualifications will continue. The practical consequences often will be increased taxpayer expense and defendants who proceed with substitute counsel instead of counsel of their choice.
MANSFIELD, J., joins this special concurrence.

. The State in its appellate brief argued against automatic imputation of the conflicts of an individual public defender to disqualify the entire office. The State acknowledged the split in authority in other jurisdictions and that the district court order disqualifying *887 McKinley’s counsel could be reversed without deciding the automatic-imputation rule. The majority’s reluctance to decide the issue today is based in part on the appellate public defender’s failure to brief the issue or take a position in this case. Parties desiring a resolution to this recurring issue in future cases should make an appropriate record in district court and fully brief the issue there and on appeal.

. The Iowa Rules of Professional Conduct on conflicts of interest are identical in relevant part to the ABA Model Rules of Professional Conduct. Iowa Rule 32:1.7 corresponds with ABA Model Rule 1.7; Iowa Rule 32:l-.9 corresponds with ABA Rule 1.9; Iowa Rule 32:1.10 corresponds with ABA Rule 1.10, although ABA Rule 1.10 contains additional provisions regarding screening; and Iowa Rule 32:1.11 corresponds with ABA Rule 1.11. Compare Iowa Rs. of Prof'l Conduct 32:1.7, 1.9, 1.10, 1.11, with Model Rules of Prof! Conduct rs. 1.7, 1.9, 1.10, 1.11 (2009).

. We expressly left open the question in State v. Smitherman, 733 N.W.2d 341, 348 & n. 8 (Iowa 2007) (citing authorities concluding the automatic-imputation rule does not apply to public defenders or government lawyers generally). Several other opinions, in dicta, suggest that public defenders are subject to the same rules as private law firms, but those cases were discussing the former rules. See State v. Watson, 620 N.W.2d 233, 241 (Iowa 2000) (citing Iowa Code of Prof'l Responsibility EC 4-2).

. Shari involved a defendant charged with several counts of murder who had been assigned two defense attorneys from the public defender's office. 204 P.3d at 455. After a date for the initial hearing was set, "the People filed a motion for conflict-free counsel," alleging "that the entire Office of the State Public Defender ... should be disqualified from representing [the defendant] because of the Office’s prior representation of the People's three primary witnesses against [the defendant].” Id. Although the trial court "recognized that neither [of the attorneys] was individually involved in any of the three witnesses’ cases,” the court nonetheless disqualified the attorneys "because other attorneys within the Public Defender’s Office had represented the witnesses.” Id. at 455-56.

. The comments to the rule support this interpretation. Iowa R. of Prof’l Conduct 32:1.11 cmt. [2] ("Because of the special problems raised by imputation within a government agency, paragraph (d) does not impute the conflicts of a lawyer currently serving as an officer or employee of the government to other associated government officers or employees, although ordinarily it would be prudent to screen such lawyers.”); Model Rule of Prof’l Conduct r. 1.11 cmt. [2] (same).