******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************************

# STATE OF CONNECTICUT *v.* GLEN S.*
## (AC 43101)

Prescott, Suarez and Vitale, Js.

*Syllabus*

The defendant, who had been convicted of sexual assault in a spousal or cohabiting relationship, appealed to this court from the judgment of the trial court revoking his probation. The defendant requested that he appear as a self-represented party in his violation of probation proceeding. Following a canvass, the trial court determined that the defendant was competent to represent himself and granted his request. During the evidentiary hearing portion of the proceeding, the defendant had difficulty formulating nonargumentative, noncompound questions while cross-examining the state's witnesses. After the state rested its case, the defendant requested that a specific attorney be appointed as his defense counsel. The trial court was unable to grant the request because the attorney was not on the authorized list of special public defenders. The trial court instead appointed a special public defender to act as standby counsel, as the defendant continued to insist that he represent himself, and it ordered a competency evaluation of the defendant pursuant to the applicable statute (§ 54-56d). After the defendant refused to cooperate with the evaluators, the trial court determined that the defendant was no longer competent to represent himself and appointed his standby counsel to fully represent him. At the request of defense counsel, the trial court ordered a second competency evaluation to determine whether the defendant was competent to stand trial. The defendant again refused to cooperate with the evaluators, and the trial court, finding that the defendant understood the charges against him and was capable of assisting with his defense, proceeded with the evidentiary hearing. The defendant declined the opportunity to recall the state's witnesses for reexamination, and he did not testify or put forth any of his own witnesses. The trial court found the defendant in violation of his probation. *Held*:

1. The defendant could not prevail on his unpreserved claim that the trial court's canvass regarding the waiver of his right to be represented by counsel was constitutionally inadequate under *Faretta* v. *California* (422 U.S. 806) because the claim failed under the third prong of *State* v. *Golding* (213 Conn. 233), as the defendant did not demonstrate that a constitutional violation existed: the trial court reasonably could have concluded that the defendant was competent to waive his right to counsel, as his request for self-representation was clear and unequivocal, he indicated during the trial court's canvass that he had represented himself in prior federal cases, that he was voluntarily waiving his right to counsel, and that he was aware of the disadvantages to proceeding as a self-represented party, and his technical legal knowledge was irrelevant to the competency determination; moreover, the trial court apprised the defendant of his maximum exposure for the violation of his probation and was not required to advise him of his maximum exposure with respect to certain misdemeanor charges that were not before the trial court at the time of the canvass.

2. The defendant could not prevail on his claim that, even if the canvass regarding the waiver of his right to be represented by counsel was constitutional, he was entitled to a new trial under *State* v. *Connor* (292 Conn. 483): the defendant failed to present sufficient evidence to demonstrate that he suffered from such a significant mental impairment that the trial court should have, sua sponte, determined that he was incompetent to represent himself, as the defendant failed to cooperate during the two court-ordered competency evaluations and his inability to effectively cross-examine the state's witnesses was insufficient, alone, to overcome the statutory presumption of competency.

3. The trial court did not err when it failed, sua sponte, to canvass the defendant about the waiver of his constitutional right to testify and this court declined to exercise its supervisory authority to require trial courts to conduct such a canvass: our Supreme Court previously determined

in *State* v. *Paradise* (213 Conn. 388), that trial courts were not constitutionally required to canvass a defendant about the waiver of his right to testify in instances such as the present case, where the defendant did not allege that he wanted to testify or that he did not know that he could testify; moreover, the exercise of supervisory powers relating to the issue was better left to our Supreme Court.

4. The defendant's claim that the trial court's judgment should be reversed because he was deprived of his constitutional right to conflict free representation because an actual conflict existed was unavailing: his public defender's one sentence reference to the defendant's threat of physical violence against him in a motion for appointment of a guardian ad litem, which was filed in an attempt to obtain releases of the defendant's relevant health information in order to determine his competency, did not provide an adequate factual basis for the defendant's contention that an actual conflict existed; moreover, the record did not reflect that his public defender sought to withdraw from further representation or that his public defender made any statements that were representative of divided loyalty.

Argued March 3—officially released August 31, 2021

*Procedural History*

Substitute information charging the defendant with the crime of violation of probation, brought to the Superior Court in the judicial district of Stamford-Norwalk, geographical area number twenty, and transferred to the judicial district of Waterbury, geographical area number four; thereafter, the matter was tried to the court, *Fasano, J.*; judgment revoking the defendant's probation, from which the defendant appealed to this court. *Affirmed.*

*Conrad Ost Seifert*, assigned counsel, for the appellant (defendant).

*Sarah Hanna*, senior assistant state's attorney, with whom, on the brief, were *Maureen T. Platt*, state's attorney, and *John R. Whalen*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

VITALE, J. The defendant, Glen S., appeals from the judgment of the trial court revoking his probation after finding that he had violated the conditions of his probation in violation of General Statutes § 53a-32. On appeal, the defendant claims: (1) the court's canvass regarding the waiver of his right to be represented by counsel was constitutionally inadequate under *Faretta* v. *California*, 422 U.S. 806, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975); (2) even if the canvass was constitutional under *Faretta*, he is entitled to a new trial under *State* v. *Connor*, 292 Conn. 483, 973 A.2d 627 (2009), because he exhibited a noticeable impairment during the first day of the violation of probation evidentiary hearing; (3) this court should exercise its supervisory authority to require that trial courts canvass criminal defendants about the waiver of their constitutional rights to testify; (4) this court should review his claim of ineffective assistance of counsel on direct appeal because the ineffectiveness of his trial counsel is clear from the record; and (5) the court's judgment should be reversed because he was deprived of his constitutional right to conflict free representation. We disagree and, accordingly, affirm the judgment of the trial court.

The following undisputed facts and procedural history are relevant to this appeal. The defendant pleaded guilty on August 13, 2008, to sexual assault in a spousal or cohabiting relationship in violation of General Statutes (Rev. to 2007) § 53a-70b. The defendant thereafter was sentenced by the court, *Fasano, J.*, to a term of fifteen years of incarceration, execution suspended after five years, and fifteen years of probation. The sentencing court imposed conditions of probation, which provided, inter alia, that the defendant (1) not violate any criminal law of Connecticut, (2) report to his probation officer as directed, (3) keep his probation officer apprised of any arrests during the probationary period, (4) keep the probation officer apprised of his location and inform the probation officer of any changes to his address or contact information, (5) undergo sex offender evaluation and treatment, and (6) register as a sex offender. On October 5, 2011, the court, *Damiani, J.*, imposed another condition of probation, barring the defendant from having any contact with the Office of the State's Attorney or any member of that office. The defendant signed an agreement detailing the conditions of his probation on March 15, 2012, and was released from prison on October 31, 2012. The defendant again signed an acknowledgment of the conditions of probation on May 3, 2017.

During his probation period, the defendant failed to complete the required sex offender treatment program and, consequently, was discharged from the program in February, 2018. In a letter to Jason Grady, the defendant's probation officer, a therapist for the sex offender

treatment program informed Grady that the defendant had been discharged due to his constant outbursts and that the defendant's individual sessions were ineffective due to his escalating mental health instability. Grady then attempted to locate the defendant in May, 2018, after the defendant missed numerous probation appointments. While searching for the defendant, Grady discovered that the address provided by the defendant for the sex offender registry was for an administrative office and the defendant had not been living at that listed address. Grady further learned that the defendant had been arrested in Norwalk on June 28, 2018, for charges of interfering with an officer in violation of General Statutes § 53a-167a and breach of the peace in violation of General Statutes § 53a-181. As a result, Grady obtained an arrest warrant on July 20, 2018, for violation of probation on the basis of the defendant's arrest in Norwalk, his failure to report to adult probation as directed, and his failure to keep Grady apprised of his address. The defendant subsequently was arrested on August 28, 2018, after an arrest warrant was issued.

The defendant was arraigned on August 29, 2018, in Superior Court in Norwalk for violation of probation as well as for his refusal to submit to fingerprinting in violation of General Statutes § 29-12. During the arraignment, the defendant asserted that he wanted to represent himself for the bond hearing. The court, *McLaughlin, J.*, denied the defendant's request to represent himself at the bond hearing and, instead, appointed a public defender to represent the defendant for the bond hearing only. The defendant repeatedly objected to the appointment of counsel throughout the bond hearing. Due to the defendant's multiple outbursts during the bond hearing, the defendant's assigned public defender requested that mental health treatment be provided by the Department of Correction for the defendant.[1] The court granted the public defender's request and ordered on the mittimus that the defendant receive mental health treatment. The violation of probation case was thereafter transferred to the Superior Court in Waterbury. The misdemeanor charges underlying the violation of probation remained in Norwalk, along with the fingerprint charge.

On August 30, 2018, during the arraignment before the Superior Court in Waterbury, the defendant continued his outbursts and insisted that he be allowed to represent himself. The defendant's assigned public defender for the bond hearing in Waterbury informed the defendant that he would not be permitted to represent himself. The defendant continued to interrupt the proceedings while claiming that the court was violating his right to represent himself. As a result of the defendant's multiple outbursts during the arraignment, the assigned public defender requested that the court order mental health and medical treatment for the defendant,

which request was granted by the court and ordered on a second mittimus. The defendant's violation of probation case was thereafter transferred to the judicial district of Waterbury.

On September 12, 2018, the court, *Fasano, J.*, asked the defendant if he would like to have an attorney to represent him, to which the defendant responded that he would like to represent himself. The court then went on to canvass the defendant in order to assess his ability to represent himself, after the defendant reiterated his desire to appear as a self-represented party. Following the canvass, the court granted the defendant's request to represent himself in the violation of probation proceeding, concluding that the canvass satisfied its concerns about whether the defendant was indeed competent to represent himself.

On October 9, 2018, the state filed a long form information alleging five grounds for the violation of probation charge against the defendant. Specifically, the state alleged that the defendant had failed to abide by the conditions that he (1) not violate any criminal laws of Connecticut, (2) report to his probation officer as directed, (3) keep his probation officer informed of his whereabouts, (4) complete sex offender evaluation and treatment, and (5) provide truthful information to the Connecticut State Police Sex Offender Registry Unit. A violation of probation evidentiary hearing was held on October 30, 2018.[2]

During the violation of probation hearing, the state presented testimony from Charles Santiago, the probation officer who had completed the defendant's probation intake and reviewed the conditions of probation with the defendant on March 15, 2012, and Grady, the defendant's probation officer at the time of his arrest for violation of his probation. Santiago testified that he reviewed the conditions of probation with the defendant prior to the defendant's release and that the defendant agreed to the conditions of probation by signing the form delineating the conditions. Grady testified that he typically had weekly check-ins with the defendant. After the defendant missed several appointments, Grady attempted to locate the defendant but could not find the defendant at his home or at his father's home. Further, he testified that the defendant had changed his address in the sex offender registry to an address for an administrative office. The state rested its case at the close of the defendant's cross-examination of Grady.

At the close of the October 30, 2018 hearing, the defendant sought to have the court appoint Attorney William T. Koch, Jr., as his defense counsel; however, the court was unable to grant the defendant's request because Koch was not on the authorized list of special public defenders. The court, however, advised the defendant that he could retain Koch as private counsel.

The court then continued the evidentiary hearing until December 30, 2018, to allow the defendant more time to prepare after the defendant indicated that he intended to call numerous witnesses to testify. The court also admonished the defendant numerous times for his repeated outbursts throughout the violation of probation hearing.

On November 8, 2018, the defendant filed a request with the court to be appointed a special public defender, specifically, Koch. While in court on November 30, 2018, a member of the public defender's office indicated to the court that the defendant was eligible for public defender services. Nevertheless, the defendant then insisted on continuing to represent himself and made a request that Koch[3] be appointed as his standby counsel. The attorney with the public defender's office who was present in court that day informed the court that Koch was not on the authorized list of special public defenders, despite the defendant's protestations to the contrary. The court informed the defendant that he would be appointed a special public defender to act as standby counsel and that Koch would be appointed only if he was indeed on the special public defender list. While in court on January 2, 2019, Attorney J. Patten Brown III was appointed as the defendant's standby counsel, and the court, sua sponte, also ordered a competency evaluation of the defendant pursuant to General Statutes § 54-56d, after raising concerns about the defendant's ability to stand trial due to his outbursts.[4] The defendant expressed that he had no intention of cooperating with the § 54-56d competency evaluators.

On February 13, 2019, after receiving a report that the defendant had failed to cooperate with the evaluators, the court determined that the defendant was not competent to represent himself and appointed Brown to fully represent him. The court nevertheless determined that the defendant was competent to stand trial because of the presumption of competence. Specifically, the court found that the defendant was "at least minimally competent . . . in terms of understanding the nature of the charges . . . and . . . capable of assisting in [his] defense . . . [but] choose[s] not to . . . ." The court determined that the defendant was minimally competent to stand trial by comparing the defendant's conduct to what it considered to be the standard for minimal competence.

The court, however, asserted that it did not believe the defendant to be capable of continuing to represent himself because of the motions that the defendant had filed and because the defendant "[spoke] over the court's voice . . . disregard[ed] orders, [was] long winded, [and asked] inappropriate questions . . . ." Brown, believing that the defendant presented competency issues, objected to the court's determination that the defendant was competent to stand trial to the extent

that the court had found him competent enough to understand the nature of the charges and to assist with his defense. Brown, consequently, requested another § 54-56d competency evaluation. The court overruled Brown's objection regarding its competency findings. On March 12, 2019, Brown filed a motion seeking the appointment of a guardian ad litem for the defendant in order to obtain the release of the defendant's protected health information to assist in determining his competency. During a hearing on April 10, 2019, Brown renewed his request for another § 54-56d competency evaluation in light of the defendant's assertion that he would cooperate with the competency evaluators. The court granted Brown's request and ordered a § 54-56d competency evaluation.

The violation of probation evidentiary hearing was continued to May 9, 2019. On that date, the court reported that the defendant once again had refused to cooperate with the evaluators after it had ordered a second evaluation for the defendant on Brown's April 10, 2019 request. The court then reiterated its conclusion that the defendant was competent to stand trial but not to represent himself. Brown raised his objection again as to the court's conclusions and requested that a guardian ad litem be assigned to the defendant or, in the alternative, if the court believed the defendant to be competent to stand trial, that it allow the defendant to represent himself. The court denied Brown's requests because the defendant twice had failed to cooperate with the evaluators and because the court, which initially had allowed the defendant to represent himself, no longer believed that he was capable of doing so. The defendant did not put forth any witnesses during the evidentiary hearing nor did he testify. The court then instructed the parties to present their closing arguments as to whether the defendant had violated one or more conditions of his probation and as to sentencing.

Following closing arguments, the court found the defendant in violation of his probation. With respect to sentencing, the court opened the defendant's underlying judgment, vacated the suspension order and imposed a sentence of ten years of imprisonment, execution suspended after six years, and the remaining period of probation. After learning that the misdemeanor charges had been transferred to Waterbury, Brown moved for a dismissal of those charges, which the court granted. This appeal followed. Additional facts and procedural history will be set forth as necessary.

I

The defendant first claims that the court's canvass regarding his waiver of his right to be represented by counsel was constitutionally inadequate under *Faretta* v. *California*, supra, 422 U.S. 806. Specifically, the defendant contends that the court did not thoroughly canvass him regarding his competence to make a know-

ing and voluntary waiver and failed to advise him of his total maximum sentence exposure on both the violation of probation and the underlying misdemeanor charges. As the state correctly observes, the defendant's *Faretta* claim is unpreserved; however, we review the defendant's claim pursuant to the bypass doctrine enunciated in *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015),[5] because the record is adequate for review and the defendant's claim is of a constitutional nature. The defendant's claim, however, fails under the third prong of *Golding* because the defendant has failed to show the existence of a constitutional violation.

The following additional facts and procedural history are relevant to this claim. On September 12, 2018, the court, *Fasano, J.*, canvassed the defendant after he asserted that he wanted to represent himself in order to ascertain whether the defendant was knowingly, intelligently, and voluntarily waiving his right to counsel.[6] After canvassing the defendant, the court found that he was competent to represent himself.

"It is well established that [w]e review the trial court's determination with respect to whether the defendant knowingly and voluntarily elected to proceed [as a self-represented party] for abuse of discretion." (Internal quotation marks omitted.) *State* v. *Joseph A.*, 336 Conn. 247, 254, 245 A.3d 785 (2020). "In determining whether there has been an abuse of discretion, every reasonable presumption should be given in favor of the correctness of the court's ruling." (Internal quotation marks omitted.) *State* v. *Cooke*, 42 Conn. App. 790, 797, 682 A.2d 513 (1996).

"The right to counsel and the right to self-representation present mutually exclusive alternatives. A criminal defendant has a constitutionally protected interest in each, but [because] the two rights cannot be exercised simultaneously, a defendant must choose between them. When the right to have competent counsel ceases as the result of a sufficient waiver, the right of self-representation begins. . . . Put another way, a defendant properly exercises his right to self-representation by knowingly and intelligently waiving his right to representation by counsel. . . .

"[A] defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation . . . . Rather, a record that affirmatively shows that [he] was literate, competent, and understanding, and that he was voluntarily exercising his informed free will sufficiently supports a waiver. . . . The nature of the inquiry that must be conducted to substantiate an effective waiver has been explicitly articulated in decisions by various federal courts of appeals. . . .

"Practice Book § [44-3] was adopted in order to implement the right of a defendant in a criminal case to act as his own attorney . . . . Before a trial court may accept a defendant's waiver of counsel, it must conduct an inquiry in accordance with § [44-3], in order to satisfy itself that the defendant's decision to waive counsel is knowingly and intelligently made. . . . Because the § [44-3] inquiry simultaneously triggers the constitutional right of a defendant to represent himself and enables the waiver of the constitutional right of a defendant to counsel, the provisions of § [44-3] cannot be construed to require anything more than is constitutionally mandated. . . .

"The multifactor analysis of [Practice Book § 44-3], therefore, is designed to assist the court in answering two fundamental questions: first, whether a criminal defendant is minimally competent to make the decision to waive counsel, and second, whether the defendant actually made that decision in a knowing, voluntary and intelligent fashion. . . . As the United States Supreme Court [has] recognized, these two questions are separate, with the former logically antecedent to the latter. . . . Inasmuch as the defendant's competence is uncontested, we proceed to whether the trial court abused its discretion in concluding that the defendant made the waiver decision in a knowing, voluntary, and intelligent fashion." (Citations omitted; internal quotation marks omitted.) *State* v. *Joseph A.*, supra, 336 Conn. 254–56. Further, as our Supreme Court observed in *State* v. *Cushard*, 328 Conn. 558, 568, 181 A.3d 74 (2018), "the court may accept a waiver of the right to counsel without specifically questioning a defendant on each of the factors listed in [Practice Book] § [44-3] if the record is sufficient to establish that the waiver is voluntary and knowing." (Internal quotation marks omitted.)

The defendant, in essence, claims that the court did not inquire sufficiently into whether he indeed was competent to knowingly and voluntarily waive his right to counsel. In response, the state argues that the court fully complied with Practice Book § 44-3, even though it was not required to do so, as strict adherence to § 44-3 is not necessary to establish that a court's canvass is constitutionally sufficient. The state contends that the canvass was adequate because (1) the record reflects that the defendant was aware of his right to counsel and the court repeatedly informed the defendant of his right to counsel, (2) the exchange between the defendant and the court exhibited that the defendant had the intelligence and capacity to appreciate the consequences of his waiver, (3) the record reflects that the defendant understood the nature of the charges against him because the defendant informed the court that his arrest in Norwalk is what predicated the violation of probation proceeding and that he knew that the maximum exposure for the violation of probation was ten

years, (4) the court repeatedly explained to the defendant the pitfalls and dangers of representing himself, and the defendant acknowledged the disparity between the prosecutor's legal education and his own, and (5) the defendant indicated that he desired to represent himself and was voluntarily deciding to do so despite the potential disadvantages.

We begin by noting that the defendant's request for self-representation was clear and unequivocal. See *Faretta* v. *California*, supra, 422 U.S. 835. "[T]he focus of a competency inquiry is the defendant's mental capacity; the question is whether he has the ability to understand the proceedings." (Emphasis omitted; internal quotation marks omitted.) *State* v. *Connor*, supra, 292 Conn. 512. The record reflects a lengthy canvass conducted by the court in which the defendant informed the court that he had represented himself in previous federal cases. Moreover, the court repeatedly asked the defendant if he was waiving his right to counsel voluntarily and whether he was aware of the disadvantages of proceeding as a self-represented party, to which the defendant answered affirmatively. There is no indication in the record that the defendant was unaware that he was waiving his right to counsel or that he was doing so involuntarily. "The purpose of the knowing and voluntary inquiry . . . is to determine whether the defendant actually does understand the significance and consequences of a particular decision and whether the decision is uncoerced." (Emphasis omitted; internal quotation marks omitted.) Id. Although the defendant also argues that the trial court's canvass was inadequate because it did not "follow up or explore the defendant's obvious lack of legal education and training," we fail to see how an inquiry into the defendant's legal training and education would have had any bearing on his competence to waive his right to counsel. "In other words, the competence that is required of a defendant seeking to waive his right to counsel is the competence to waive the right, not the competence to represent himself. . . . Consequently, a defendant's technical legal knowledge is not relevant to the determination [of] whether he is competent to waive his right to counsel . . . ." (Citation omitted; emphasis omitted; internal quotation marks omitted.) *State* v. *Connor*, supra, 511. Notably, during the January 2, 2019 hearing, the defendant stated that the court's canvass during the September 12, 2018 arraignment had been thorough. On the basis of the record, the court reasonably could have concluded that the defendant was competent to waive his right to counsel. Therefore, we conclude that the court did not abuse its discretion in determining that the defendant knowingly, intelligently, and voluntarily had waived his right to counsel. See *State* v. *D'Antonio*, 274 Conn. 658, 709–11, 877 A.2d 696 (2005).

The defendant also claims that the canvass was constitutionally deficient because he was not advised of

the total maximum sentence exposure for both the violation of probation and the underlying misdemeanor charges.

During the canvass, the court advised the defendant that he was "looking at a violation of probation where [he] could receive up to ten years" of incarceration, to which the defendant responded that he understood. The defendant argues that the court should also have indicated the maximum exposure for the misdemeanor charges; however, as the state correctly notes, the defendant was not arraigned on the misdemeanor charges in Waterbury because those charges had not been transferred from Norwalk as of the defendant's September 12, 2018 arraignment in Waterbury, when the canvass took place. Thus, there was no need for the court to canvass the defendant about the misdemeanor charges that were not yet before it. The defendant also asserts that his statement to the court during the canvass that he would not be in jail for more than "ninety more days" was an indication that he was not aware of his maximum exposure at sentencing. A review of the record reveals that the defendant's statement concerning the amount of time for which he believed he would be incarcerated was premised on his belief that "[the violation of probation proceeding] is nothing because it's a house of cards built on a foundation of lies and a false arrest in Norwalk." There is no indication that the court did not apprise the defendant of the maximum exposure for the violation of probation. Therefore, the defendant's unpreserved claim that the court's canvass was constitutionally deficient fails under the third prong of *Golding*.

II

Alternatively, the defendant contends that, even if the court's canvass was adequate under *Faretta*, he is entitled to a new trial pursuant to our Supreme Court's decision in *State* v. *Connor*, supra, 292 Conn. 483. Specifically, the defendant argues that he is entitled to a new trial because he "suffered from an impairment noticeable enough during the violation of probation evidentiary hearing on October 30, 2018," and could not perform basic representational functions during that hearing, such that the court should have appointed counsel no later than the defendant's attempted cross-examination of the state's first witness during that hearing.[7] In other words, the defendant asserts that the court should have, sua sponte, determined that he was incompetent to represent himself. We disagree.

A review of the record reveals that the defendant had difficulty formulating nonargumentative, noncompound questions while cross-examining Santiago on October 30, 2018, during the first day of the evidentiary hearing.[8] Our Supreme Court in *State* v. *Connor*, supra, 292 Conn. 518–19, exercised its supervisory authority and established that, "upon a finding that a mentally ill or mentally

incapacitated defendant is competent to stand trial and to waive his right to counsel at that trial, the trial court must make another determination, that is, *whether the defendant also is competent to conduct the trial proceedings without counsel*." (Emphasis added.) On appeal, the defendant claims, in essence, that his inability to effectively cross-examine the state's first witness was an indication that he suffered from such a significant mental impairment that the court should have, sua sponte, determined that he was incompetent to represent himself or, at the least, continued the proceeding so that the defendant's competence to represent himself could be investigated further.

At the outset, we note that, after the defendant was appointed full counsel on February 13, 2019, the court gave the defendant the opportunity to recall the state's witnesses to reexamine them. The defendant, however, declined the invitation to do so. We also note that the defendant failed to cooperate with the competency evaluators during both of the court-ordered § 54-56d competency evaluations. Further, the defendant did not raise any objections to the trial court concerning the timing of the court's appointment of counsel, which he now claims on appeal came "too late." The defendant objected only to the court's determination that he was capable of assisting with his own defense. In response to the defendant's objection and argument, the court granted his request for a second competency evaluation. "Pursuant to § 54-56d (b), [every] defendant is presumed to be competent." (Internal quotation marks omitted.) *State* v. *Campbell*, 328 Conn. 444, 486, 180 A.3d 882 (2018). Because of his failure to cooperate with the competency evaluators, the presumption of competency to stand trial was not rebutted. The defendant's failure to cooperate with the evaluators undermines his argument and now causes him to rely on his alleged ineffective cross-examination of the state's witnesses to bolster his claim that an "impairment noticeable enough" existed during the evidentiary hearing on October 30, 2018, such that the court should have determined that he was incompetent to represent himself.

To the extent that the defendant relies on his inability to effectively cross-examine the state's first witness as evidence of his incompetence to represent himself, our Supreme Court in *Connor* addressed a similar claim. The court in *Connor* reasoned that the defendant's lengthy and confusing questioning during voir dire, his " 'rambling dialogue' with the court concerning his health and the fact that he thought that correction officers planned to kill him . . . and . . . the [defendant's inability] . . . to pose relevant questions," reflected "more on the defendant's lack of legal experience and expertise than . . . on his mental condition." *State* v. *Connor*, supra, 292 Conn. 524. Although, competency to stand trial and competency for self-representation

are separate concepts, the defendant's statutorily presumed competency to stand trial appertains to his competency for self-representation. In that vein, we observe that, with respect to the interrelated issue of competency to stand trial, our Supreme Court has held that a defendant's incompetence to stand trial is not "demonstrated by his lack of legal competence to try his case skillfully." *State* v. *Wolff*, 237 Conn. 633, 666, 678 A.2d 1369 (1996); see also *State* v. *Johnson*, 253 Conn. 1, 30, 751 A.2d 298 (2000) (citing *State* v. *Johnson*, 22 Conn. App. 477, 489, 578 A.2d 1085, cert. denied, 216 Conn. 817, 580 A.2d 63 (1990), for notion that "defendant's obstreperous, uncooperative or belligerent behavior . . . and hostility toward [his] attorney [does] not necessarily indicate defendant's incompetency" (internal quotation marks omitted)). Thus, in the present case, the defendant cannot solely rely on his inability to effectively cross-examine the state's witnesses to establish a purported impairment sufficient to sustain his claim pursuant to *Connor*. The defendant's failure to cooperate with the competency evaluators adversely affects his present claim, given the statutory presumption of competency. The statutory presumption of competency was not overcome by sufficient evidence. The fact that an evaluation was merely ordered, but not completed, does not alter the nature of the record before us.

On the basis of the record and the facts before the court, there was insufficient evidence that the defendant suffered from such a significant mental impairment that the court should have, sua sponte, determined that he was incompetent to represent himself. Although an evaluation for the defendant's competency to stand trial would have been helpful in determining whether there was a basis for the court to determine that the defendant was incompetent to represent himself, the defendant, nevertheless, still must demonstrate that there was sufficient evidence to alert the court of a significant mental impairment that required the court to exercise its powers sua sponte. Accordingly, the defendant's claim under *Connor* fails.

### III

The defendant next claims that the court erred when it failed, sua sponte, to canvass him about the waiver of his constitutional right to testify. This claim is unpreserved, but the defendant invites this court to provide him a remedy in the exercise of its supervisory authority. For the reasons set forth herein, we decline to do so.

"[T]his court possesses an inherent supervisory authority over the administration of justice. . . . [T]he integrity of the judicial system serves as a unifying principle behind the seemingly disparate use of our supervisory powers. . . . [O]ur supervisory powers are invoked only in the rare circumstance where [the] traditional protections are inadequate to ensure the fair and just administration of the courts . . . . Ordinarily,

our supervisory powers are invoked to enunciate a rule that is not constitutionally required but that we think is preferable as a matter of policy. . . . As our Supreme Court explained, [s]upervisory powers are exercised to direct trial courts to adopt judicial procedures that will address matters that are of utmost seriousness, not only for the integrity of a particular trial but also for the perceived fairness of the judicial system as a whole. . . . *State* v. *Valedon*, 261 Conn. 381, 386, 802 A.2d 836 (2002). At the same time, [a]lthough [w]e previously have exercised our supervisory powers to direct trial courts to adopt judicial procedures . . . we also have exercised our authority to address the result in individual cases . . . because [certain] conduct, although not rising to the level of constitutional magnitude, is unduly offensive to the maintenance of a sound judicial process." (Citations omitted; internal quotation marks omitted.) *State* v. *Jimenez-Jaramill*, 134 Conn. App. 346, 380–81, 38 A.3d 239, cert. denied, 305 Conn. 913, 45 A.3d 100 (2012).

As the defendant concedes in his appellate brief, our Supreme Court's decision in *State* v. *Paradise*, 213 Conn. 388, 404–405, 567 A.2d 1221 (1990), overruled in part on other grounds by *State* v. *Skakel*, 276 Conn. 633, 693, 888 A.2d 985, cert. denied, 549 U.S. 1030, 127 S. Ct. 578, 166 L. Ed. 2d 428 (2006), is controlling with respect to whether a trial court is constitutionally required to canvass a defendant about the waiver of his or her right to testify. *Paradise* provides that federal law does not "[contain] any such procedural requirement" for a trial judge to affirmatively canvass the defendant "to ensure that his waiver of his right to testify is knowing, voluntary and intelligent . . . where the defendant has not alleged that he wanted to testify or that he did not know that he could testify." Id. In the present case, the defendant has not claimed that he expressed any such desire to testify at trial or that he did not know that he could testify; therefore, the court had no constitutional duty to canvass him concerning his right to testify under *Paradise*.

The defendant, however, requests that this court exercise its supervisory authority to "impose an affirmative duty on our trial courts to canvass criminal defendants and alleged probation violators even when the defendant does not ask to testify or does not declare he will not testify." We previously declined a request to exercise our supervisory authority with respect to a similar issue in *State* v. *Dijmarescu*, 182 Conn. App. 135, 158–59, 189 A.3d 111, cert. denied, 329 Conn. 912, 186 A.3d 707 (2018), in which we declined to require trial courts to canvass defendants regarding their right against self-incrimination before testifying. "The exercise of our supervisory powers is an extraordinary remedy to be invoked only when circumstances are such that the issue at hand, while not rising to the level of a constitutional violation, is nonetheless of utmost

seriousness, not only for the integrity of a particular trial but also for the perceived fairness of the judicial system as a whole." (Internal quotation marks omitted.) Id., 158. We see no reason to depart from our decision in *Dijmarescu*, in which we "conclude[d] that any determination of whether a court should be required to canvass a defendant regarding his right against self-incrimination before he testifies is better left to our Supreme Court." Id., 159. Accordingly, we decline the defendant's request that we exercise our supervisory authority with respect to this claim.

IV

The defendant next claims that he was deprived of his sixth amendment right to conflict free representation because an actual conflict existed.[9] The defendant contends that an actual conflict existed because he threatened Brown with physical violence and Brown published it to the court.[10] The state contends that the record is inadequate to review this claim. We disagree with the state because the basis for the alleged conflict is readily apparent from the record, as it consists mainly of the motion for appointment of a guardian ad litem in which counsel indicated that the defendant made a threat of physical violence. Because that is the basis of the motion, the record is not inadequate to review this claim, as the state contends.

The following additional facts are relevant to the resolution of this claim. On March 12, 2019, Brown filed a motion with the court seeking an appointment of a guardian ad litem for the defendant. Although the motion requested appointment of a guardian ad litem "for the purpose of obtaining releases of information as necessary to determine [the defendant's] competency," nothing was developed in the record in connection with the motion related to the existence of an actual conflict of interest. It appears that Brown included, inter alia, one sentence in that motion indicating that the defendant had threatened him and the court with physical violence.

We begin by setting forth the standard of review and legal principles that govern our analysis. "Our review in this case is plenary. Although the underlying historical facts found by the . . . court may not be disturbed unless they were clearly erroneous, whether those facts constituted a violation of the [defendant's] rights under the sixth amendment is a mixed determination of law and fact that requires the application of legal principles to the historical facts of this case. . . . As such, that question requires plenary review by this court unfettered by the clearly erroneous standard. . . .

"The sixth amendment to the United States constitution as applied to the states through the fourteenth amendment, and article first, § 8, of the Connecticut constitution, guarantee to a criminal defendant the right

to effective assistance of counsel. . . . Where a constitutional right to counsel exists, our [s]ixth [a]mendment cases hold that there is a correlative right to representation that is free from conflicts of interest. . . . The right attaches at trial as well as at all critical stages of a criminal proceeding . . . .

"Our Supreme Court has described a conflict of interest as that which impedes [an attorney's] paramount duty of loyalty to his client. . . . Thus, an attorney may be considered to be laboring under an impaired duty of loyalty, and thereby be subject to conflicting interests, because of interests or factors personal to him that are inconsistent, diverse or otherwise discordant with [the interests] of his client . . . . Conflicts of interest . . . may arise between the defendant and the defense counsel. The key here should be the presence of a specific concern that would divide counsel's loyalties. . . .

"In a case of a claimed conflict of interest, therefore, in order to establish a violation of the sixth amendment the defendant has a two-pronged task. He must establish (1) that counsel actively represented conflicting interests and (2) that an actual conflict of interest adversely affected his lawyer's performance." (Citations omitted; internal quotation marks omitted.) *DaSilva* v. *Commissioner of Correction*, 132 Conn. App. 780, 784–85, 34 A.3d 429 (2012).

The defendant argues on appeal that Brown's assertion concerning the defendant's threats of physical violence, standing alone, was "an actual conflict . . . because the defendant threatened [Brown] with violence and [Brown] published this [information] to the court." (Emphasis omitted.) Moreover, the defendant argues that Brown's decision to include that statement in the motion was an indication that Brown's performance was affected by the purported threats. "To demonstrate an actual conflict of interest, the [defendant] must be able to point to specific instances in the record which suggest impairment or compromise of his interests for the benefit of another party. . . . A mere theoretical division of loyalties is not enough." (Internal quotation marks omitted.) *DaSilva* v. *Commissioner of Correction*, supra, 132 Conn. App. 785–86. A review of the guardian ad litem motion that Brown filed, however, demonstrates that the sole purpose of the motion and the inclusion of the statement at issue was to obtain releases of the defendant's relevant health information, which Brown needed in order to determine the defendant's competency. The defendant has not provided a factual basis apart from the one sentence included in Brown's written motion that mentioned the defendant's threat to support his contention that an actual conflict existed. The record does not reflect that Brown sought to withdraw from further representation of the defendant following the purported threat, nor does the record contain any statements by Brown that are representa-

tive of divided loyalty. In the absence of additional facts in the record in support of the defendant's claim, we are not persuaded that there was an actual conflict or, stated differently, an "impairment or compromise of [the defendant's] interests for the benefit of another party." (Internal quotation marks omitted.) Id. Thus, this claim fails.

The judgment is affirmed.

In this opinion the other judges concurred.

* In accordance with our policy of protecting the privacy interests of the victims of sexual assault, we decline to use the defendant's full name or to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

[1] The purpose of the requested mental health treatment is unclear from the record.

[2] "[R]evocation of probation hearings, pursuant to § 53a-32, are comprised of two distinct phases, each with a distinct purpose. . . . In the evidentiary phase, [a] factual determination by a trial court as to whether a probationer has violated a condition of probation must first be made. . . . The state must establish a violation of probation by a fair preponderance of the evidence. . . . That is to say, the evidence must induce a reasonable belief that it is more probable than not that the defendant has violated a condition of his or her probation. . . . In the dispositional phase, [i]f a violation is found, a court must next determine whether probation should be revoked because the beneficial aspects of probation are no longer being served." (Citations omitted; internal quotation marks omitted.) *State* v. *Parker*, 201 Conn. App. 435, 444–45, 242 A.3d 132 (2020).

[3] Although the transcript references Attorney William Cox, the defendant was actually requesting that Koch be appointed.

[4] General Statutes § 54-56d provides in relevant part: "(a) . . . A defendant shall not be tried, convicted or sentenced while the defendant is not competent. For the purposes of this section, a defendant is not competent if the defendant is unable to understand the proceedings against him or her or to assist in his or her own defense.

"(b) . . . A defendant is presumed to be competent. The burden of proving that the defendant is not competent by a preponderance of the evidence and the burden of going forward with the evidence are on the party raising the issue. The burden of going forward with the evidence shall be on the state if the court raises the issue. The court may call its own witnesses and conduct its own inquiry.

"(c) . . . If, at any time during a criminal proceeding, it appears that the defendant is not competent, counsel for the defendant or for the state, or the court, on its own motion, may request an examination to determine the defendant's competency.

"(d) . . . If the court finds that the request for an examination is justified and that, in accordance with procedures established by the judges of the Superior Court, there is probable cause to believe that the defendant has committed the crime for which the defendant is charged, the court shall order an examination of the defendant as to his or her competency. . . ."

[5] "*Golding* is a narrow exception to the general rule that an appellate court will not entertain a claim that has not been raised in the trial court. The reason for the rule is obvious: to permit a party to raise a claim on appeal that has not been raised at trial—after it is too late for the trial court or the opposing party to address the claim—would encourage trial by ambuscade, which is unfair to both the trial court and the opposing party." (Internal quotation marks omitted.) *State* v. *Elson*, 311 Conn. 726, 749, 91 A.3d 862 (2014).

"Under *Golding*, a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." (Emphasis in original; internal quotation marks omitted.) *State* v. *Lemanski*, 201 Conn. App. 360, 365–66 n.3, 242

A.3d 532 (2020), cert. denied, 336 Conn. 907, 244 A.3d 147 (2021).

[6] The following colloquy occurred at the time of the defendant's arraignment in Waterbury:

"The Court: You have to be competent to represent yourself.

"The Defendant: I am. . . .

"The Court: So let me ask you some questions. I have to canvass you about representing yourself, okay?

"The Defendant: I understand that, Your Honor, yes.

"The Court: You understand you have the right to be represented by an attorney, even if you can't afford an attorney? Do you understand you have that right?

"The Defendant: Yes, Your Honor.

"The Court: Are you waiving that right voluntarily?

"The Defendant: Yes. I have too much money to get a public . . . defender.

"The Court: Okay. Have you had any experience representing yourself?

"The Defendant: Yes, Your Honor.

"The Court: Yes?

"The Defendant: Yes. I filed several federal lawsuits in federal court and had positive results as a result. . . .

"The Court: So you've handled these cases on your own; is that right?

"The Defendant: Yes, Your Honor, over the years, yes.

"The Court: Have you any law school—

"The Defendant: Yes. The private school I went to in New Hampshire, the last quarter of tenth grade and the eleventh grade when we studied law, and I graduated at the end of eleventh grade before I turned sixteen in September.

"The Court: All right. So you've had occasion to study law. You understand that the state has gone to college, has gone to law school, and they are very well versed in the law. I just want to show you the disadvantages.

"The Defendant: Well, Your Honor, there's no case—

"The Court: Just tell me if you understand that they've gone to law school and college.

"The Defendant: Yes, no problem.

"The Court: You understand they have experience putting on these hearings. You have a violation of probation. You don't have any other pending charges, right?

"The Defendant: In Norwalk that is the basis for the violation of probation. It was an illegal arrest, and I was assaulted . . . .

"The Court: You're going to represent yourself in that one, too?

"The Defendant: Yes, Your Honor.

"The Court: Let me tell you the disadvantages, if you understand them. That's all I need to do.

"The Defendant: All right.

"The Court: Number one: The state's been to law school. Number two: They've tried cases. They know how to put on evidence. They know how to cross-examine witnesses. They know how to argue at the conclusion of the evidence. These are all things you really haven't had a lot of experience with.

"The Defendant: Your Honor, [80] percent of the cases get pled out, okay.

"The Court: Yes, I'm pretty sure I know that.

"The Defendant: Right. I'm just reconfirming that I am competent to represent myself pro se. Furthermore, this is nothing because it's a house of cards built on a foundation of lies and a false arrest in Norwalk.

"The Court: You don't have to argue your case just yet. I just want to be sure you're capable.

"The Defendant: Yeah, no problem.

"The Court: You have to understand all the advantages they have. And I think you do understand that.

"The Defendant: Thank you, Your Honor.

"The Court: What's the amount of time he could receive, the exposure?

"[The Prosecutor]: Ten years. . . .

"The Defendant: Maximum.

"The Court: So you're looking at a violation of probation where you could receive up to ten years. Do you understand that?

"The Defendant: Yes, Your Honor. I already have a habeas corpus put in a year ago.

"The Court: Because you're going to be representing yourself, and at the conclusion, you can't really yell at your lawyer if you get up to ten years in jail.

"The Defendant: Your Honor, I'm not. I'll be in jail for a maximum of ninety more days, if that.

"The Court: In any event, you understand the exposure?

"The Defendant: Yes, Your Honor. Yes.

"The Court: Nonetheless, you wish to proceed on your own?

"The Defendant: Right.

"The Court: You're doing that voluntarily and of your own free will. You're aware of all the disadvantages that I enumerated, right?

"The Defendant: Right.

"The Court: You're aware of the exposure in this particular case?

"The Defendant: Yes, Your Honor.

"The Court: All right. I'm satisfied that you're competent, that you're

capable of representing yourself.

"The one other thing is you're going to have to allow the state to state its case. You're going to have to listen to the orders of the court. You're going to have to comply with those orders and the rules of evidence and so on. You understand that?

"The Defendant: Yes. I just have one request. That when I'm speaking, I don't get interrupted by the district attorney's office and vice versa. I will not interrupt the district attorney's office when they are speaking.

"The Court: How about the court? Are you going to interrupt them?

"The Defendant: No, I'm not going to interrupt you, Your Honor.

"The Court: All right. I appreciate that. So you're going to comply with the rules?

"The Defendant: Yes.

"The Court: You're going to give the state an opportunity to be heard. You're going to listen to the court. You're going to let them finish its sentence before you say something.

"The Defendant: Yes.

"The Court: So you're going to be allowed to represent yourself.

"The Defendant: Thank you. They can go first."

[7] Although the defendant claims that counsel was not appointed until May, 2019, the record reveals that full counsel was appointed on February 13, 2019.

[8] For instance, the following exchange occurred during the defendant's cross-examination of Santiago, the state's first witness:

"[The Defendant]: All right. Now the reason why you, when I met with you and I was complaining about the public defender, the reason why you committed perjury and falsely accused me of threating her was because you were not happy that I was granted parole to the feds, and that it would be less time for you guys to be able to violate my probation on a technicality because even the federal probation officers did not want me released on my release date, and that's why they had me illegally put in Whiting Forensic Institute without a prior court order, and that the Connecticut local mental health authority said that there was no clinical reason to keep me locked up in a mental hospital, and so you had that same feeling. Because any time anybody says, sexual assault, it makes the rule book and the laws go, and justice out the window.

"[The State]: Objection, Your Honor.

"The Court: Sustained. Here is the thing. You have to ask a question, not tell the story. . . .

"The Court: So, you ask a question now. . . .

"[The Defendant]: So, why did you feel you were above the law? Because you thought you weren't going to get caught, or because you thought, well, he's a sex offender, and he's got a long history of crimes? Nobody is going to believe him? Or is it that you are in a position of authority and you think you could do whatever you want . . . . So . . . why was it you felt that you could lie?"

[9] The defendant also requests that this court review his ineffective assistance of counsel claim on direct appeal. We decline to do so. "[A] claim of ineffective assistance of counsel is more properly pursued on a petition for new trial or on a petition for a writ of habeas corpus rather than on direct appeal . . . [because] [t]he trial transcript seldom discloses all of the considerations of strategy that may have induced counsel to follow a particular course of action. . . . It is preferable that all of the claims of ineffective assistance, those arguably supported by the record as well as others requiring an evidentiary hearing, be evaluated by the same trier in the same proceeding. . . . Furthermore, [o]n the rare occasions that [this court has] addressed an ineffective assistance of counsel claim on direct appeal, [it has] limited [its] review to allegations that the defendant's sixth amendment rights had been jeopardized by the actions of the trial court, rather than by those of his counsel. . . . [This court has] addressed such claims, moreover, only where the record of the trial court's allegedly improper action was adequate for review or the issue presented was a question of law, not one of fact requiring further evidentiary development. . . . Additionally, this court has observed that a defendant may pursue a claim of ineffective assistance in a direct appeal in connection with a claim that his guilty plea was the result of ineffective assistance of counsel. A claim of ineffective assistance of counsel is generally made pursuant to a petition for a writ of habeas corpus rather than in a direct appeal. . . . Section 39-27 of the Practice Book, however, provides an exception to that general rule when ineffective assistance of counsel results in a guilty plea." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *State* v. *Polynice*, 164 Conn. App. 390, 396–97, 133 A.3d 952, cert. denied, 321 Conn. 914, 136 A.3d 1274 (2016).

The defendant's claim that trial counsel provided ineffective assistance by recommending three years of incarceration would require an evidentiary

hearing to ascertain the reasoning behind trial counsel's recommendation. "The transcript of the proceedings in the trial court allows us to examine the *actions* of defense counsel but not the underlying *reasons* for his actions." (Emphasis in original; footnote omitted.) *State* v. *Gregory*, 191 Conn. 142, 144, 463 A.2d 609 (1983). For example, given the strength of the state's evidence regarding the defendant's failure to comply with the conditions of his probation, by advancing the foregoing argument, defense counsel may very well have been attempting to mitigate the potential consequences of a finding that the defendant was in violation of probation.

The record is inadequate, and, thus, we decline to review this claim on direct appeal.

[10] The defendant also claims that the court was "under the duty to inquire whether there was a conflict of interest" when (a) trial counsel sought to have a guardian ad litem appointed for the defendant, (b) the court became aware that the defendant had filed a grievance against trial counsel, and (c) trial counsel failed to cross-examine any of the state's witnesses and failed to present any defense. In essence, the defendant claims that the court had a duty to inquire as to a potential conflict of interest; however, the defendant provided little to no analysis of this claim and, instead, focused his analysis on whether there was an actual conflict. "We are not required to review issues that have been improperly presented to this court through an inadequate brief." (Internal quotation marks omitted.) *State* v. *David P.*, 70 Conn. App. 462, 473, 800 A.2d 541, cert. denied, 262 Conn. 907, 810 A.2d 275 (2002). We, therefore, decline to review the defendant's claim that the court had a duty to inquire about a potential conflict because it was inadequately briefed.

--------